# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2203

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Kawaskii Blanche, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 22, 1997

Filed: June 23, 1998

_____

Before McMILLIAN, LOKEN and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Kawaskii Blanche (appellant) appeals from a final judgment entered in the United States District Court[1] for the District of Minnesota, upon a jury verdict, finding

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

him guilty of being a felon[2] in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[3]  The district court sentenced appellant under the federal sentencing guidelines to fifty-one months imprisonment, three years of supervised release, and a special assessment of one hundred dollars.  For reversal, appellant argues that the district court erred in (1) partially denying his motion for judgment of acquittal, (2) refusing to immunize his sister, the complaining witness, (3) admitting his audiotaped telephone conversation with a Minneapolis police officer in which appellant stated his intention to obtain more guns upon release from custody for then-pending state law gun possession charges, (4) limiting his closing argument, and (5) excluding his sister from the courtroom during the final minutes of trial.  For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231.  Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.

## Background

On June 25, 1996, at about 7:00 p.m., Minneapolis police responded to a 911 call reporting a disturbance at the home of appellant's parents, James and Jacqueline

---

[2]On October 2, 1995, appellant pleaded guilty in Hennepin County District Court, Minneapolis, Minnesota, to illegal possession of a short-barreled shotgun. Appellant was convicted on April 5, 1996 for this crime and sentenced to five years probation.

[3]Appellant was also charged with and convicted of conspiring to obtain firearms through false statements in violation of 18 U.S.C. § 922 (a)(6).  However, the district court granted appellant's motion for judgment of acquittal notwithstanding the verdict on this count.

Blanche. The call was placed by Shawana Blanche (Shawana), appellant's then-sixteen year-old sister, who described an assault to her person with a handgun by appellant. During that call, Shawana also described the handgun used in the assault and appellant's clothing.

Upon arriving at the Blanche family residence, Minneapolis police saw appellant exiting the house in clothing that matched the 911 dispatcher's description and took appellant into custody. Appellant did not have a gun on his person. During the execution of a search warrant at the Blanche home later that evening, the police seized a Lorcin .380 handgun and ammunition for the gun inside a cabinet in a bedroom in the west end of the basement. The police also seized a fully loaded, semi-automatic Ruger .40 pistol inside a box in the ceiling rafters in the east end of the basement and found additional ammunition for that gun behind a speaker in the basement bedroom. The Ruger was the same make as the gun that Shawana had described to the 911 operator. Neither the Lorcin nor the Ruger weapon bore appellant's fingerprints. However, the police found several pieces of mail addressed to appellant in the basement bedroom where the Lorcin handgun was found. (Appellant did not live in his parents' home but was known to stay there at least two to three times per month.)

Following appellant's arrest, on June 26 and 27, 1996, and later in November 1996, Minneapolis detectives conducted videotaped interviews of appellant that lasted a total of 325 minutes. Ninety percent of the interviews dealt with appellant's alleged participation in a fatal drive-by shooting; only ten percent dealt with the firearm charges in the instant case. During the interviews, appellant denied assaulting Shawana and having any involvement with the Lorcin handgun. However, after initially denying ownership of the Ruger pistol, on the second day of the interviews, appellant admitted that his girlfriend, Lashawn Slayden ("Slayden") had purchased the Ruger pistol for

him.[4]  Appellant also admitted to placing the Ruger pistol in the ceiling rafters in the basement.

The officers interviewed Shawana the night of the assault and photographed her showing a fresh bruise and lump on the right side of her forehead.  Her version of events at that time confirmed the allegations that she had made to the 911 dispatcher regarding the assault.  Shawana was interviewed by police four days later and gave the same account.  Shawana also retold this same version of events before the grand jury a few months later.  On the eve of testifying at trial, however, Shawana changed her story, averring not only that she had lied about appellant assaulting her, but also that she, not appellant, had hidden the guns in the basement of her parent's home.  When appellant called Shawana to testify under subpoena, the district court warned Shawana that she might face "very serious legal consequences" if her testimony at trial differed materially from her testimony before the grand jury, and further, counseled her to seek the advice of her own attorney.  The government had contacted the public defender's office about appointing Shawana "independent counsel" after learning that she would testify that appellant did not have a gun on the evening of June 25, 1996.

The district court ultimately summoned a federal public defender to advise Shawana of the consequences of her testimony.  After conferring with Shawana, counsel from the public defender's office informed the district court that Shawana did not want counsel.  T.T. I at 134.  The following exchange occurred:

---

[4]Appellant and Slayden were charged in a superseding indictment in the instant case.  Count 1 charged appellant with being a felon in possession of firearms.  Counts 2-15 charged Slayden with being a straw purchaser of firearms.  Count 16 charged both Slayden and appellant with a conspiracy to obtain firearms through the use of false statements on firearm acquisition forms (straw purchases).  Slayden pleaded guilty to Count 2 prior to trial and received a sentence of 18 months imprisonment.

MR. MOHRING [Counsel from the federal public defender's office]: Your Honor, I have had some time to talk with the witness. Because of the conflict of interest,[5] I haven't gone into any of the details of what her testimony might be or what her prior testimony was. I cannot, therefore, advise the court about whether she has Fifth Amendment exposure in that arena or with respect to what her testimony is. Standard advice that I would give to anybody who has any concerns in that area is that they speak with a lawyer who can get into those details, and that would certainly be my advice to this witness or anyone in her situation.

. . . [I]t's not my understanding that the witness wishes counsel. That is certainly against my advice, but that may be where she is at.

. . . .

THE COURT: . . . . Mr. Mohring, I'm going to tell you what I'm going to do, and then I am also going to tell you at the same time, Ms. Blanche, I think I am going to continue this matter. I am going to ask you if you will take Ms. Blanche with you and see if you can find somebody who is from some other organization or someone else other than one of your colleagues and get this young woman some advice, because it is my strong sense that she needs some, and then she is free to make whatever decisions she wishes, but I want to make sure they are informed decisions.

Ms. Blanche, do you understand what I have in mind?

THE WITNESS [Shawana Blanche]: Sure.

THE COURT: All right. Ms. Blanche, Mr. Mohring will help you find an attorney, someone will come and talk with you. Now, listen to that person. You are permitted to make any decisions you want, but nobody should make a decision without understanding what happens if they make

---

[5]Mr. Mohring suffered from a conflict of interest in light of the federal public defender's representation of Slayden in the underlying matter.

a particular decision, and so we will put this matter over until 9:00 o'clock tomorrow morning.

      THE WITNESS: Excuse me, but I have no misunderstandings right now. I am ready to testify.

      THE COURT:  I appreciate that, ma'am, but one of the reasons lawyers go to law school is they may know things that you don't, and I would suggest that it would be appropriate for you to chat to a lawyer before you testify today.

      MR. ORTH [Defense counsel]: I object to that procedure, Your Honor.

      THE COURT: Your objection is noted, Counsel.  Thank you.

Trial Transcript, Volume I, at 133-35.  The following morning, after consulting with new counsel, Shawana announced to the district court that she intended to invoke her Fifth Amendment privilege not to testify.  The district court then excused her from testifying. Neither the government nor the district court would grant Shawana immunity at appellant's request.

At trial, Jacquelyn Blanche, Tynique Nako, and April Majors, eyewitnesses of the June 25, 1996 incident, testified that appellant did not pull a handgun on Shawana and did not have possession of a handgun during the argument.  After the defense rested, the district court ordered, sua sponte, appellant's mother, father, and Shawana from the courtroom in order to "maximize . . . opportunities" for their recall and in accordance with the parties' earlier agreement.  Appellant's mother and father had already testified for the defense and, as noted above, Shawana had invoked her Fifth Amendment privilege against self-incrimination.  Appellant repeatedly objected to the sequestration of his family on the ground that they would not be recalled as witnesses, and thus, their sequestration violated his Sixth Amendment right to a public trial.  Appellant's parents were not recalled and Shawana did not testify.

6

Appellant was convicted, following the jury trial, of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). This appeal followed.

## Discussion

## I. Due process violations

Appellant argues that he was effectively denied his due process right to a fair trial as a result of the cumulative effect of several prejudicial errors at trial. Of most significance on appeal are appellant's allegations that the district court erred in soliciting independent counsel for Shawana and in failing to grant immunity[6] to her after she invoked her Fifth Amendment right not to testify. Specifically, appellant contends that "the government and the district court combined to insure [that] Shawana Blanche would invoke the [F]ifth [A]mendment" and the jury would be denied her exculpatory evidence. Brief for Appellant at 13. These "errors," asserts appellant, coupled with the district court's admission of appellant's jail cell conversation and the limitation of appellant's closing argument, deprived him of his due process right to a fair trial.

In support, appellant cites the law of several other circuits holding that the government may be compelled to grant immunity to an exculpatory witness where government overreaching has forced that witness to invoke the Fifth Amendment. See, e.g., United States v. Abbas, 74 F.3d 506, 512 (4th Cir.), cert. denied, 517 U.S. 1229 (1996); United States v. Baker, 10 F.3d 1374, 1414-15 (9th Cir. 1993); United States v. Follin, 979 F.2d 369, 374 (5th Cir. 1992); United States v. Bahadar, 954 F.2d 821,

---

[6]At oral argument, appellant's counsel stated that the issue was not the district court's and the government's refusal to grant immunity, but rather, the violation of appellant's Fifth and Sixth Amendment rights to put on a defense. However, appellant relied heavily on the district court's and the government's refusal to grant immunity as the basis for his due process and fair trial claims both in his brief and at oral argument. Accordingly, we address this issue squarely.

825-26 (2d Cir. 1992); <u>United States v. Chalan</u>, 812 F.2d 1302, 1310 (10th Cir. 1987); <u>Government of the Virgin Islands v. Smith</u>, 615 F.2d 964, 968-69 (3d Cir.1980)). Appellant argues that where, as here, both the government and the district court actively encouraged the complaining witness to invoke the Fifth Amendment, this principle holds even greater force. Appellant further contends that both the district court's and the government's failure to grant Shawana immunity after she invoked the Fifth Amendment compounded the error. Appellant challenges the district court's and the government's refusal to grant immunity on the ground that the threat of prosecuting Shawana for perjury was "chimerical" and in bad faith because it was unlikely that, Shawana, a minor on medication and under psychiatric care, would be prosecuted.

"Traditionally, defendants have used two theories in presenting due process arguments for immunization of defense witnesses. The first suggests setting the conviction aside to permit the balanced immunization of witnesses; the second would authorize judicial immunity." <u>United States v. Capozzi</u>, 883 F.2d 608, 613 (8th Cir. 1989) (<u>Capozzi</u>). In the instant case, appellant does not allege that the government granted use immunity to its witnesses but refused to immunize defense witnesses. Rather, appellant relies on the second theory, "judicial immunity," which holds that a court has inherent power to immunize witnesses whose exculpatory testimony is essential to an effective defense.

This court has consistently declined to apply the concept of judicial immunity. <u>See, e.g.</u>, <u>United States v. Dierling</u>, 131 F.3d 722, 732 (8th Cir. 1997) (<u>Dierling</u>), <u>cert. denied</u>, 118 S. Ct. 1379 (1998); <u>United States v. Stewart</u>, 122 F.3d 625, 627 (8th Cir. 1997); <u>United States v. Warfield</u>, 97 F.3d 1014, 1020 (8th Cir. 1996) (<u>Warfield</u>), <u>cert. denied</u>, 117 S. Ct. 1119 (1997); <u>United States v. Robaina</u>, 39 F.3d 858, 863 (8th Cir. 1994); <u>Capozzi</u>, 883 F.2d at 613-14; <u>United States v. Doddington</u>, 822 F.2d 818, 821 (8th Cir. 1987); <u>United States v. Hardrich</u>, 707 F.2d 992, 994 (8th Cir. 1983) (<u>Hardrich</u>). This court has posited, however, that "[e]ven assuming a district court has authority to immunize defense witnesses, . . . it is clear that such an order is an extraordinary

8

remedy, to be used sparingly, and then only where the proffered evidence is 'clearly exculpatory.'" Capozzi, 883 F.2d at 614 (footnote and citations omitted); accord Dierling, 131 F.3d at 732 ("Use immunity has been ordered elsewhere on occasion for a witness with 'clearly exculpatory' evidence where there is no strong countervailing interest of the government.") (citing Government of the Virgin Islands v. Smith, 615 F.2d at 972-73); Warfield, 97 F.3d at 1020 n.3 ("Even if we were to formally recognize the concept [of judicial immunity], . . . the doctrine is applicable only if the proffered testimony of the witness is 'clearly exculpatory.'") (citing Hardrich, 707 F.2d at 993-94). We have not had the opportunity to address a case in which the evidence for which immunity was sought was clearly exculpatory. See, e.g., Dierling, 131 F.3d at 732; Capozzi, 883 F.2d at 614.

In Capozzi, the appellant argued that "the timing of the government's notification of unindicted co-conspirators was designed and intended to intimidate and discourage appellant's witnesses thereby interfering with the fact finding process." Id. This court found, however, that "[t]he seven month period from indictment to trial was more than an adequate time to prepare a defense. Moreover, the [indictees' role in the underlying offense] was known to all from the time the indictment was returned. Finally, there ha[d] been no showing by appellant of prosecutorial misconduct in making its immunity decisions." Id. Thus, we held that the "extraordinary relief" of judicial immunity, if available, could not be ordered where the appellant's allegations of prosecutorial misconduct were meritless. Id. We also considered the possible violation of the appellant's Sixth Amendment right to compulsory process,[7] holding that, to establish such a violation, a defendant must show the absence of material testimony favorable

---

[7]In United States v. Capozzi, this court explained: "[T]he . . . Compulsory Process Clause gives the defendant the right to bring his witness to court and have the witness's non-privileged testimony heard, but does [not] carry with it the additional right to displace a proper claim of privilege, including the privilege against self-incrimination." 883 F.2d 608, 614 n.11 (8th Cir. 1989) (quoting United States v. Turkish, 623 F.2d 769, 774 (2d Cir. 1980)).

to his or her defense.  Id. (citing United States v. Rubin, 836 F.2d 1096, 1101 (8th Cir. 1988); United States v. Holtzen, 718 F.2d 876, 878 (8th Cir. 1983) (per curiam)).  We found that the appellant was permitted to present to the jury as much of the exculpatory evidence as was necessary to his defense and therefore suffered no Sixth Amendment violation.  Id. at 615.  We therefore refrained from resolving "the ultimate question of whether a court has inherent authority to fashion such extraordinary relief as judicial immunity of potential defense witnesses."  Id.

Likewise, in Dierling, the appellant sought to overturn his conviction on the ground that the trial court erred in refusing to provide immunity for his witnesses after the court appointed counsel for them and they were advised of their Fifth Amendment rights.  131 F.3d at 732.  We declined to examine "the policy implications of judicial involvement in use immunity" on the ground that "[t]here was enough evidence to convict the appellants of conspiracy without evidence of the killing, and there was no deliberate distortion of the truth-finding process by the government, and no government misconduct or threats to witnesses."  Id.

We examine appellant's due process claims under the same analysis.   Warnings concerning the dangers of perjury can be emphasized to the point that they compel a witness, by threat or intimidation, not to testify or to invoke the Fifth Amendment.  See, e.g., Webb v. Texas, 409 U.S. 95 (1972) (witness refused to testify for defense after the trial judge singled him out for a lengthy admonition of the dangers and dire consequences of perjury and suggested that he would testify untruthfully); United States v. Heller, 830 F.2d 150 (11th Cir. 1987) (defense witness was subjected to threats and interference of I.R.S. agents who forced the witness accountant to testify falsely against defendant); United States v. Morrison, 535 F.2d 223 (3d Cir. 1976) (defense witness asserted her Fifth Amendment rights because the prosecutor repeatedly warned her of her liability to the prosecution and held an intimidating personal interview with her).  However, in such cases, the government or judicial

conduct must be responsible for the violation of the defendant's the right to present witnesses on his or her own behalf to establish a defense.

In the instant case, we believe that the conduct of the government, in contacting the public defender's office, and the district court, in pointedly cautioning Shawana and adjourning the proceedings to allow her to consult with new counsel over defense counsel's and her own unequivocal objection, came close to prosecutorial or judicial overreaching to compel Shawana's invocation of the Fifth Amendment. We do not find error, however, in the district court's solicitation of independent counsel for Shawana or in warning her of the serious consequences of perjuring herself in light of the facts that Shawana was a minor under psychiatric care and unrepresented by counsel.[8] See Culkin v. Purkett, 45 F.3d 1229 (8th Cir. 1995) (holding that trial judge "properly" warned preadolescent witness who was unrepresented by counsel of the consequences of perjury and appointed counsel for witness after she equivocated regarding her desire to testify without advice of counsel). Further, we find that appellant was not effectively deprived of a fair opportunity to present his defense. Appellant called to testify three eyewitnesses whose testimony contradicted the government's evidence and was permitted to fully cross-examine the government's witnesses. Finally, we defer to the district court's finding that the government acted in good faith in attempting to secure independent counsel for Shawana. Indeed, the evidence suggests that Shawana reached her decision not to testify after consulting with independent court-appointed counsel and not as a result of government or judicial coercion. Accordingly, we again decline to resolve "the ultimate question of whether a court has inherent authority to fashion such extraordinary relief as judicial immunity of potential defense witnesses," Capozzi, 883 F.2d at 615, where palpable judicial or government interference has been shown.

---

[8]While we commend the district court for diligently protecting Shawana's right to advice of counsel, we caution district judges to refrain from assuming the role of advocate even in such delicate circumstances as preventing a minor from exposing herself to perjury charges.

As for the district court's admission of appellant's audiotaped jail cell conversation with a Minneapolis police officer, we hold that the district court did not abuse its discretion in admitting the audiotape as an admission of a party opponent, under the Fed. R. Evid. 801(d)(2)(A), or as evidence of appellant's motive, preparation, and plan to commit the underlying offense, Fed. R. Evid. 404(b).

In addition, we hold that the district court did not unfairly curtail appellant's closing argument by barring appellant's reference to the portions of the interview videotape that were not presented to the jury. The government did not introduce the other portions of the interview videotape at trial because they dealt with appellant's alleged participation in a fatal drive-by shooting. However, in a bench conference just prior to trial, defense counsel stated that he intended to argue to the jury that the government should have introduced the remaining portions of the videotape. The district court responded that defense counsel could address the remaining portions of the videotape in closing argument only if the government could reopen the evidence. We hold that it was not error for the district court to bar appellant from referring in closing argument to the remaining portions of the videotape. Those portions were obviously prejudicial to appellant and therefore inadmissable. Moreover, there is no evidence in the record that appellant suffered any prejudice as a result of the district court's limitation of his closing argument. Appellant had access to the entire six-hour videotape and, by agreement, could have introduced into evidence any portion of the videotape that would have been helpful to his defense. Further, appellant referred to the remaining portions of the videotape in closing, despite the district court's instruction, stating that "there are about 325 minutes of videotape, and the government's picked out three." Trial Transcript, Volume II, at 59. In light of the foregoing, we conclude that the district court did not commit any error in violation of appellant's due process right to a fair trial.

12

## II. Sixth Amendment right to a public trial

In his brief on appeal, appellant contends that his Sixth Amendment right to a public trial was violated by the exclusion of his mother, father, and Shawana from the courtroom at the close of his case. At oral argument on appeal, appellate counsel limited this contention to the exclusion of Shawana. Appellant asserts that because defense counsel, as an officer of the court, assured the district court that Shawana would not be called to testify, the district court had no basis for excluding Shawana. We hold that, despite defense counsel's averments, the district court had valid concerns under Rule 615 of the Federal Rules of Evidence[9] in light of Shawana's earlier vacillation regarding her willingness to testify. Further, to the extent that the exclusion of Shawana (and her parents) amounts to a partial closure of the proceedings, the district court made express findings as to why partial closure was warranted under the circumstances. See Waller v. Georgia, 467 U.S. 39, 45 (1985); see also United States v. Farmer, 32 F.3d 369, 371-72 (8th Cir. 1994) (McMillian, J., dissenting) ("[T]he requirement that the trial court make sufficient findings to allow the reviewing court to determine whether or not a closure was justified is equally applicable in a case of partial closure."). The district court found that the parties' prior agreement to sequester witnesses under Rule 615 and the interest in maximizing appellant's opportunity to present his defense through the recall of his parents or the new testimony of Shawana justified partial closure. Moreover, appellant has failed to demonstrate that he suffered any prejudice from the partial closure. The record shows that the trial was nearly concluded at the time that appellant's family was excluded. We therefore hold that the district court did not abuse its discretion in excluding appellant's family from the courtroom.

---

[9]Rule 615 of the Federal Rules of Evidence provides, in relevant part, that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion."

## III. Sufficiency of evidence

Finally, appellant asserts that there was insufficient evidence, as a matter of law, to convict appellant of possession of the Lorcin handgun found in the basement bedroom because of appellant's repeated denial of involvement with the Lorcin handgun and the government's failure to link appellant through direct evidence to the purchase or possession of the gun.  Appellant argues that the jury could only have convicted him of possession of a firearm if the jury was swayed by unfair prejudice.  We disagree.

A verdict may be reversed for insufficiency of the evidence if, upon viewing the evidence in the light most favorable to the verdict,  no reasonable jury could have found defendant guilty beyond a reasonable doubt upon the proof adduced.  See United States v. Wade, 111 F.3d 602, 604 (8th Cir. 1997); United States v. Stands, 105 F.3d 1565, 1570 (8th Cir. 1997).  Here, the proof adduced by the government included (1) the taped 911 call made by Shawana accusing appellant of assault, identifying appellant, and describing the gun ultimately found in the basement, (2) mail addressed to appellant found in the same room where the Lorcin handgun was found, (3) appellant's admission that Slayden purchased the Ruger pistol for him, and (4) appellant's admission that he placed the Ruger pistol in the ceiling rafters in the basement.[10]  We hold that this evidence is sufficient to support appellant's conviction.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

---

[10]In addition, the government established the other elements of the crime by showing that both guns were in working order and had previously traveled in interstate commerce and that appellant was a convicted felon.

A true copy.

Attest:

   CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.