**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

JOHN FREDERICK JAEGER,
  *Defendant-Appellant.*

Nos. 06-30621
    06-30622

D.C. Nos.
CR-05-00023-2-
DWM
CR-06-00003-DWM

OPINION

Appeals from the United States District Court
for the District of Montana
Donald W. Molloy, Chief District Judge, Presiding

Argued and Submitted
May 5, 2008—Seattle, Washington

Filed August 18, 2008

Before: Arthur L. Alarcón, Susan P. Graber, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

David F. Ness, Assistant Federal Defender, Federal Defenders of Montana, Great Falls, Montana, for the defendant-appellant.

Joshua S. Van De Wetering, Assistant United States Attorney, United States Attorney's Office, Missoula, Montana, for the plaintiff-appellee.

**OPINION**

GRABER, Circuit Judge:

A jury convicted Defendant John Frederick Jaeger of conspiracy to distribute methamphetamine, distribution of methamphetamine, distribution of methamphetamine to a juvenile, and possession of a firearm by a felon, for which he received a sentence of 324 months in prison. He timely appeals, arguing, among other things,[1] that the district court violated his Sixth Amendment right to present a defense when it admonished Julie Jaeger, his wife, concerning the possible detrimental consequences to her of her testimony. Mrs. Jaeger then invoked her Fifth Amendment privilege and refused to testify on Defendant's behalf. We affirm because the court's

---

[1]We reject Defendant's remaining arguments in a memorandum disposition filed this date.

admonition was neither coercive nor intimidating and did not interfere with Mrs. Jaeger's decision whether to testify.

## FACTUAL AND PROCEDURAL BACKGROUND

On a fall day in 2004, local law enforcement officers in Butte, Montana, saw a pickup truck driving erratically and nearly striking another vehicle. Believing that the driver might be under the influence of drugs or alcohol, an officer pulled over the truck. Defendant was driving and had two passengers with him. Defendant could not produce the truck's registration, his driver's license, or proof of insurance. When a records check revealed that he had been cited four times for driving without proof of insurance, Defendant was taken into custody.

An officer questioned one of the passengers, who initially gave a false name (Tony Hoffman) and a false birth date in what the officer described as "broken English." After more questioning, the passenger said that his name was Victor Sepulveda and that he was a friend of Defendant's and was staying in Defendant's home. The officer arrested the passenger for obstructing a police officer. Responding later to questions from an agent of Immigration and Customs Enforcement, the passenger finally provided his full, correct name (Victorino Sandoval-Sepulveda) and admitted that he was a citizen of Mexico who was in the United States illegally. The agent knew Sandoval-Sepulveda and knew that he had been deported from Montana twice previously, most recently about eight months earlier.

On the basis of those facts, federal agents obtained a warrant to search the truck that Defendant was driving for evidence of the entry, transportation, or harboring of illegal aliens, such as "[r]eceipts, canceled checks, payment books, credit card information, fraudulent Immigration documentation, letters, papers, audio recordings, video recordings, airline or bus tickets, passports and United States currency." The

search instead revealed 6 grams of marijuana, a marijuana pipe, a disposable camera, packaging materials, several thousand dollars in cash, and a piece of paper with a telephone number on it.

After law enforcement officers searched the truck, seized the listed items, and gathered additional incriminating information, they obtained a second warrant, this time to search the two Butte, Montana, residences of Defendant and his wife for drugs and drug paraphernalia. Under the authority of the second warrant, agents seized drug paraphernalia, two scales, a propane torch, 14 pills, a handgun, a water bong, a glass pipe with methamphetamine residue, and a hide-a-can novelty item.

Defendant and four named co-defendants, including Defendant's wife, were indicted for conspiracy to distribute methamphetamine and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment alleged that the conspiracy included Defendant, his four named co-defendants, and individuals both known and unknown to the grand jury. A superseding indictment added charges of distributing methamphetamine to a juvenile in violation of 21 U.S.C. § 859 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). A separate indictment added a count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). All counts were consolidated for trial.

After the government completed its rather extensive case-in-chief, Defendant called two witnesses in his defense: his son, Jesse Jaeger, and his wife who, by this time, had pleaded guilty to the drug charges and was awaiting sentencing. A few questions into Defendant's direct examination of his wife, the court interrupted the testimony and held a sidebar with counsel. The court asked defense counsel if Mrs. Jaeger was represented by a lawyer, where that lawyer was, and whether Mrs. Jaeger was aware that her testimony could result in adverse consequences at her sentencing. Defense counsel responded

that he did not know where Mrs. Jaeger's lawyer was, but that he had spoken with Mrs. Jaeger and her lawyer the week before and that Mrs. Jaeger desired to testify. Without objection from either party, the court explained to Mrs. Jaeger that her testimony could have adverse consequences and recessed the proceeding to provide her an opportunity to call her lawyer for advice. The following exchange took place in front of the jury:

> THE COURT: Mrs. Jaeger, you are represented by a lawyer, right?
>
> THE WITNESS: Yes, yes.
>
> THE COURT: And your lawyer's not here today.
>
> THE WITNESS: No.
>
> THE COURT: Well, you have entered a plea of guilty to the charges in this case, right?
>
> THE WITNESS: Yes.
>
> THE COURT: I need to admonish you that there may be things that are elicited from you that may impact you personally if you testify here. So if you want to have your lawyer here, we'll take a break so that you can have your lawyer come over and provide advice to you.
>
> THE WITNESS: Okay. I'm not sure what you meant by that first part, though when you say - -
>
> THE COURT: Well, that's why you need to have your lawyer here.
>
> THE WITNESS: Okay. Um, he's in Helena now.

THE COURT: Who is it; Michael Donahoe?

THE WITNESS: No, Andrew Huff.

THE COURT: Well, ladies and gentlemen, because of the circumstances, we're going to take a 15-minute break and I'm going to give Ms. Jaeger an opportunity to call her attorney so that there isn't anything that is adversely — that she isn't aware of that could adversely impact here.

After Mrs. Jaeger spoke with her lawyer, the court held the following colloquy *without* the jury present:

THE COURT: Mrs. Jaeger, it's my understanding that you've had an opportunity to speak with your attorney; is that right?

THE WITNESS: Yes.

THE COURT: Okay. Now, what I don't want to do is create a situation where we put you in an uncomfortable position as it relates to testifying here. And without telling me what your lawyer and you talked about, I have an understanding that you are going to invoke the Fifth Amendment right against self-incrimination; is that right?

THE WITNESS: Yes, yes.

THE COURT: All right. I think, under the circumstances, Mr. Judnich [Counsel for Defendant], is there some area of examination which would not delve into the Fifth Amendment issue that you intended to inquire about? Because I do not want to be in a situation where Mrs. Jaeger invokes the Fifth Amendment and her right against self-incrimination

and how that may impact whatever her situation is in front of the jury.

    MR. JUDNICH: I would agree, Your Honor. And just to be safe, I think I should not ask any further questions in case she needs to do that.

The jury returned guilty verdicts on all three drug counts, finding that each involved more than 50 grams of methamphetamine, and on the firearms count. The jury found Defendant not guilty of the money laundering count. The district court sentenced him to 324 months in prison. Defendant timely appeals.

## STANDARD OF REVIEW

Because Defendant did not object contemporaneously, we review for plain error the district court's explanation to Mrs. Jaeger that her testimony might have adverse consequences to her in her upcoming sentencing proceeding.[2] *See United States v. Olano*, 507 U.S. 725, 731-32 (1993) (explaining that Federal Rule of Criminal Procedure 52(b) governs the appeal of an error not timely raised before the district court). To establish plain error, Defendant must prove that: "(1) there was error; (2) the error was plain; and (3) the error affected substantial rights." *United States v. Geston*, 299 F.3d 1130, 1134-35 (9th Cir. 2002) (internal quotation marks omitted). A conviction will be reversed for plain error "only if, viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial

---

[2]Defendant asserts that we should review for abuse of discretion. *See, e.g.*, *United States v. Seschillie*, 310 F.3d 1208, 1211 (9th Cir. 2002) (stating that we review for abuse of discretion a district court's limitation on a witness' testimony); *United States v. Laurins*, 857 F.2d 529, 537-38 (9th Cir. 1988) (addressing allegations of a trial judge's advocacy on behalf of a party). Although failure to object in the district court results in our review only for plain error, we observe that the outcome would be the same here under either standard.

proceedings, or where failing to reverse a conviction would result in a miscarriage of justice." *Id.* at 1135 (internal quotation marks omitted).

## DISCUSSION

**[1]** The Supreme Court has held that, in certain circumstances, a judge's admonition can be so threatening as to interfere with a witness' testimony and "effectively dr[i]ve that witness off the stand" in violation of a defendant's constitutional rights. *Webb v. Texas*, 409 U.S. 95, 98 (1972) (per curiam); *see also United States v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998) (extending *Webb* to prosecutorial misconduct and holding that "[a] defendant's constitutional rights are implicated only where the prosecutor or trial judge employs coercive or intimidating language or tactics that substantially interfere with a defense witness' decision whether to testify").

The trial judge in *Webb* admonished a witness as follows:

"Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the lik[e]lihood is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under

oath. You may tell the truth and if you do, that is all
right, but if you lie you can get into real trouble. The
court wants you to know that. You don't owe any-
body anything to testify and it must be done freely
and voluntarily and with the thorough understanding
that you know the hazard you are taking."

409 U.S. at 95-96. The witness then "refused to testify for any
purpose and was excused by the court." *Id.* at 96.

**[2]** The Supreme Court characterized the judge's admoni-
tion to the defendant's sole witness as having been made in
"unnecessarily strong terms." 409 U.S. at 98. The Court con-
cluded that the "lengthy and intimidating warning[ ] strongly
suggests that the judge's comments were the cause of [the
witness'] refusal to testify." *Id.* at 97. The judge not only gave
a "lengthy admonition on the dangers of perjury," but also
"implied that he expected [the witness] to lie" and that, if the
witness lied, the judge would ensure that the witness "would
be prosecuted and probably convicted for perjury." *Id.* In
addition, the judge emphasized that any sentence for perjury
would be added to the witness' present sentence, likely
impairing any future chance for parole. *Id.* Consequently, "the
judge could well have exerted such duress on the witness'
mind as to preclude him from making a free and voluntary
choice whether or not to testify." *Id.* at 98.

**[3]** Here, unlike in *Webb*, the district court's statements to
Mrs. Jaeger were brief, factual, and explanatory; they were
mildly worded; they were designed to allow Mrs. Jaeger an
opportunity to make her own decision, in consultation with
her counsel in an ongoing and related matter, rather than to
impose a decision on her; and they conveyed neither an
assumption that perjury would occur nor a threat of prosecu-
tion for perjury. And, unlike in *Webb*, Mrs. Jaeger was not
lectured on any *specific* consequences that might flow from
her testimony. Additionally, the court expressly allowed
defense counsel to explore any area of questioning that would

not trigger Mrs. Jaeger's invocation of the Fifth Amendment, although defense counsel declined. On those facts, we find no substantial interference with Mrs. Jaeger's decision whether to testify, let alone any coercion or intimidation. *See United States v. Harlin*, 539 F.2d 679, 680-81 (9th Cir. 1976) (concluding that the trial judge's warning given to the co-defendant's counsel, " 'I assume you have advised her of the penalties of perjury . . . and that if it appears that a defendant is lying, the Court can take that into account, too,' " was "neither coercive, threatening, grossly improper nor prejudicial").

Other circuit courts, considering similar facts, have reached the same conclusion. *See, e.g.*, *United States v. George*, 363 F.3d 666, 670-71 (7th Cir. 2004) (holding that warnings given to a witness by the trial court and the prosecutor concerning the possibility that testifying could place the witness in jeopardy of revocation of his plea agreement and charges of perjury or false statement did not violate the defendant's due process rights because the warnings "merely corroborated, in a straight-forward and nonthreatening manner, the information given by [the witness'] attorney"); *United States v. Blanche*, 149 F.3d 763, 768-69 (8th Cir. 1998) (concluding that, although the conduct of the government and the district court in contacting the public defender and adjourning the proceedings to permit a witness, over her "unequivocal objection," to consult a lawyer before testifying came close to overreaching, there was no error in the court's warning of the consequences of perjury and the witness' decision to not testify was on advice of counsel and not because of the actions of the judge or prosecutor); *United States v. Santiago-Becerril*, 130 F.3d 11, 24-26 (1st Cir. 1997) (holding that the trial court's admonition of a witness, even though "detailed and strongly stated," did not coerce the witness because the court did not threaten or badger the witness, and the court provided the witness with her own counsel to ensure that the decision was voluntary).

**[4]** In sum, the district court carefully walked a line that avoided error in Defendant's case and in his wife's case. The

court did not prevent Mrs. Jaeger from testifying, did not threaten her, did not coerce her, did not substantially interfere with her decision whether to testify, and did not drive her off the stand. The court merely provided the witness with information and access to her counsel once it became aware of possible self-incrimination. Thus, the court's admonition of Mrs. Jaeger did not violate Defendant's Sixth Amendment rights.

AFFIRMED.