**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JARVIS MARTIN JUAN,
*Defendant-Appellant.*

No. 11-10539

D.C. No.
2:11-cr-00554-
JAT-1

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
November 6, 2012—San Francisco, California

Filed January 7, 2013

Before: Robert D. Sack,[*] Ronald M. Gould,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Robert D. Sack, Senior Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction and sentence for assault in a case in which the defendant claimed that his right to due process was violated where the prosecution threatened one of its own witnesses, the defendant's wife, with possible perjury charges, allegedly causing her to change her previously exculpatory trial testimony to be inculpatory.

The panel wrote that the government's substantial interference with the testimony of its own witness, even if the wrongful interference does not drive the witness off the stand, can in certain circumstances violate the defendant's right to due process. Without expressing judgment as to whether the prosecutor's conduct here was warranted, the panel held that the defendant's claim would fail in any event because he can point to no evidence that proves that the allegedly threatening statements – which the defendant concedes were directed solely to the district judge – were ever communicated to the witness.

The panel rejected the defendant's contention that the district court committed procedural error at sentencing when it explained the 18 U.S.C. § 3553(a) reasons supporting its chosen sentence immediately after imposing sentence.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Daniel Kaplan, Assistant Federal Public Defender (argued), Phoenix, Arizona, for Defendant-Appellant.

Joan G. Ruffennach, Assistant United States Attorney (argued), Phoenix, Arizona, for Plaintiff-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Appellant Jarvis Martin Juan appeals his conviction and sentencing for felony and misdemeanor assault. Juan challenges his conviction on due-process grounds, claiming his constitutional rights were violated where the prosecution "threatened" one of its own witnesses with possible perjury charges, allegedly causing the witness to change her previously exculpatory trial testimony to be inculpatory. Because Juan cannot meet his evidentiary burden, his due-process challenge must be rejected.

Similarly, Juan's claim of sentencing error fails. Juan's argument that the district court committed procedural error where it explained the 18 U.S.C. § 3553(a) factors supporting its chosen sentence immediately after imposing sentence relies on a misunderstanding of our opinion in *United States v. Waknine*, 543 F.3d 546 (9th Cir. 2008).

## FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2010, Juan and his wife, C.J., celebrated C.J.'s birthday on the Gila River Indian Reservation. The

celebration started early, and by the afternoon Juan and C.J. had each consumed several forty-ounce bottles of malt liquor, along with some whiskey and cocaine.

As dusk fell, Juan and C.J. began arguing after Juan accused her of infidelity. C.J. interrupted the argument to drive a friend to a nearby motel, but the row continued over text message. When C.J. returned home, Juan was waiting. Before she could get out of the car, Juan punched C.J. in the head and pulled her out of her SUV. Juan then got into the vehicle and sped off around the corner.

Juan returned in the vehicle almost immediately, and he and C.J. continued their argument in the middle of the road. At some point, Juan kicked and punched C.J., who fell to the pavement. Juan then got back into the SUV, put the car in reverse, and ran over C.J., dragging her under the vehicle. Juan exited the vehicle once again, punched C.J. two more times, and then drove off.

C.J. was taken to the hospital, where she was treated for her injuries. She was released from the hospital early the next morning, but not before she was interviewed by Detective Romo Lewis of the Gila River Police Department. During that tape-recorded interview, C.J. claimed that Juan had beaten her and run her over with the SUV. Juan was later indicted for assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3) and assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(a)(6).

At trial, C.J. refused to cooperate with the government, and her attendance had to be compelled by the district court. On direct examination, C.J. testified that she sustained her

injuries when she accidentally fell behind Juan's SUV. C.J. also testified that Juan never hit her.

Sensing its case slipping away, the government sought to introduce C.J.'s earlier statements to Detective Lewis. The district court properly denied this request. Frustrated by the status of the case, and convinced that C.J. was lying on the stand, the government requested that both C.J. and the jury be excused so that the parties could determine "next steps." C.J. and the jury were excused, and during the long colloquy that followed, the government repeatedly claimed that C.J. was lying, or otherwise indicated that her trial testimony was "nonsense." After nearly forty-five minutes of legal discussion, the government finally suggested to the district court that it was "beginning to wonder if [C.J.] needs a lawyer appointed because I believe she's committed perjury and after looking at jail calls between her and her husband I actually believe she's committed perjury." The district judge agreed, and appointed counsel for C.J. At no point did Juan's attorney object.

The next day, after C.J. had the opportunity to consult with her lawyer, the government recalled C.J. to the stand. The government asked C.J. if she "wanted to correct some of [her] testimony" or "add to it." C.J. said she did, and then testified that Juan hit her with both his hands and the SUV. Juan was later convicted on all counts.

The district court held a sentencing hearing on October 18, 2011. After considering the views of both parties, the judge sentenced Juan to 37 months imprisonment. Immediately after imposing sentence the district court explained its reasons for selecting the chosen sentence, and

also explained how it would further the objectives of 18 U.S.C. § 3553(a). Juan did not object.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review Juan's conviction under 28 U.S.C. § 1291. Because this is a direct appeal from a judgment of conviction in the federal system, the Federal Rules of Criminal Procedure apply. *Johnson v. United States*, 520 U.S. 461, 466 (1997). Rule 51(b) codifies the familiar procedural principle that a defendant must contemporaneously object to an alleged error in order to preserve the issue. *Puckett v. United States*, 556 U.S. 129, 134 (2009). Where, as here, the defendant does not object to an error in the trial court, any review is for plain error. Fed. R. Crim. P. 52(b); *see also Johnson*, 520 U.S. at 466.

We have jurisdiction to review Juan's sentence under 18 U.S.C. § 3742. Where a defendant does not object to his sentencing in the district court, we review for plain error. *United States v. Waknine*, 543 F.3d 546, 551 (9th Cir. 2008).

## DISCUSSION

## I. Witness Intimidation

Juan contends his Fifth Amendment right to a fair trial was violated where the government allegedly threatened his wife with perjury charges, thereby coercing her into giving incriminating testimony.

The Fifth Amendment Due Process Clause "guarantees that a criminal defendant will be treated with the fundamental fairness essential to the very concept of justice." *United*

*States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (internal quotations and citation omitted). At its core, the right to due process is the right to fairly "present a defense." *Webb v. Texas*, 409 U.S. 95, 98 (1972) (per curiam) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)); *see also United States v. Scheffer*, 523 U.S. 303, 325–27 (1998) (Stevens, J. dissenting).

Although a defendant's right to present a defense is not absolute, the Supreme Court has recognized that the government may not substantially interfere with the testimony of defense witnesses. *Webb*, 409 U.S. at 98; *see also United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir. 1998); *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir. 1984). "Unnecessarily strong admonitions against perjury aimed at discouraging defense witnesses from testifying have been held to deprive a criminal defendant of his [constitutional rights]."[1] *Vavages*, 151 F.3d at 1188. "The

---

[1] A number of the cases following *Webb v. Texas*, including *United States v. Vavages*, have held that *Webb* protects a defendant's Sixth Amendment right to compulsory process. *See, e.g.*, *Vavages*, 151 F.3d at 1188; *United States v. Jaeger*, 538 F.3d 1227 (9th Cir. 2008). These holdings are fully consistent with Juan's argument that *Webb* also protects a defendant's broader due-process rights. The Supreme Court has made clear that much of its reasoning regarding the Compulsory Process Clause of the Sixth Amendment is borrowed from cases involving the Due Process Clause of the Fifth Amendment. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982). Other courts have also recognized that "[t]he Fifth (or Fourteenth if a state is involved) and Sixth Amendments concomitantly provide a criminal defendant the right to present a defense." *United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005). Therefore, we do not unduly concern ourselves with drawing fine distinctions between cases interpreting the Sixth Amendment Compulsory Process Clause and those interpreting the Fifth Amendment Due Process Clause.

seminal case is *Webb v. Texas*," in which the Supreme Court reversed a defendant's conviction after the trial judge "gratuitously singled out" the defense's sole witness for a "lengthy admonition on the dangers of perjury," including assuring the witness that if he lied on the stand, "he would be prosecuted and probably convicted for perjury." *Id.* at 1188–89 (quoting *Webb*, 409 U.S. at 97–98). The witness then refused to testify. *Webb*, 409 U.S. at 95.

Although the trial judge was the target of the defendant's allegations of error in *Webb*, "a number of post-*Webb* cases reveal that the trial judge is not the only person whose admonitions against perjury can deprive a criminal defendant of his [constitutional] right[s]." *Vavages*, 151 F.3d at 1189. "[T]he conduct of prosecutors, like the conduct of judges, is unquestionably governed by *Webb*." *Id.*

What is not unquestionably governed by *Webb* is whether the government's substantial interference with the testimony *of its own witness* can ever violate a defendant's due-process rights. To our knowledge, no court applying *Webb* has ever extended its principles to prosecution witnesses. Similarly, no court applying *Webb* has ever extended it to situations, like this one, where the allegedly threatened witness continued to testify after the alleged threat. Instead, the prototypical *Webb* challenge involves conduct so threatening as to "effectively drive [the] witness off the stand." *United States v. Jaeger*, 538 F.3d 1227, 1231 (9th Cir. 2008) (quoting *Webb*, 409 U.S. at 98).

Despite this dearth of precedent, Juan persuasively argues that *Webb* and its progeny should apply to all witnesses. We have often stressed the "imperative that prosecutors and other officials maintain a posture of strict neutrality when advising

witnesses of their duties and rights." *Vavages*, 151 F.3d at 1193 (quoting *United States v. Rich*, 580 F.2d 929, 934 (9th Cir. 1978)). Violating this duty by bullying a prosecution witness away from testimony that could undermine the government's case is no less distortive of the judicial fact-finding process than improperly meddling with the testimony of a defense witness. Regardless of whose witness is interfered with, the constitutional harm to the defendant is the same—the inability to mount a fair and complete defense. We see no reason to doubt that the government's substantial interference with the testimony of its own witnesses can violate the Due Process Clause.

It also seems clear that the substantial and wrongful interference with a prosecution or defense witness that does not "drive the witness off the stand," but instead leads the witness to materially change his or her prior trial testimony can, in certain circumstances, violate due process. Indeed, such violations have the potential to work even greater harm than those that simply result in a blanket refusal to testify. Where a witness is coerced into recanting testimony that was favorable to the defendant, the harm to the defense involves not merely the *prevention* of prospective testimony that *might* have bolstered its case, but the *retraction* of testimony that *did* bolster its case. *See Valenzuela-Bernal*, 458 U.S. at 872 (due process is offended where the defendant is wrongfully denied testimony that "would have been favorable and material.").

Nevertheless, although we agree with Juan that the principles of *Webb* should extend to his case, we cannot conclude that he is entitled to relief. In order to prevail, Juan must "demonstrate misconduct by a preponderance of the evidence." *Vavages*, 151 F.3d at 1188 (citing *United States*

*v. Lord*, 711 F.2d 887, 891 n.3 (9th Cir. 1983)). "The substantial interference inquiry is extremely fact specific," and Juan must prove that under the totality of the circumstances, "the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary[.]" *Id.* at 1190 (internal quotations and citations omitted). We note that in many circumstances, warning a witness about the possibility and consequences of perjury charges is warranted. *See, e.g.*, *Williams v. Woodford*, 384 F.3d 567, 603 (9th Cir. 2004) ("merely warning a witness of the consequences of perjury does not unduly pressure the witness's choice to testify or violate the defendant's right to due process."). We need express no judgment as to whether the prosecutor's conduct in this case was, or was not, warranted. For even assuming, arguendo, that the prosecutor's statements here were inappropriately threatening, Juan's claim would still fail because Juan can point to no evidence that proves that the allegedly threatening statements—which Juan concedes were directed solely to the district judge—were ever communicated to C.J. Without proof that C.J. ever heard the prosecutor's remarks, or proof that C.J.'s appointed lawyer relayed those remarks to C.J., Juan simply cannot establish the necessary causal link between the prosecutor's "threats" and C.J.'s changed testimony. Because, Juan has not adequately shown causation, he cannot meet his burden to demonstrate misconduct by a preponderance of the evidence. Accordingly, we affirm Juan's conviction.

## II. Sentencing Procedures

Juan also appeals his sentence, arguing that the district court committed procedural error when it explained the 18 U.S.C. § 3553(a) reasons supporting its chosen sentence

immediately after imposing sentence. Juan claims that such a procedure is proscribed by our opinion in *United States v. Waknine*, which found plain procedural error where the "district court gave no reasons in reference to the § 3553(a) factors *before* imposing sentence." 543 F.3d at 554 (9th Cir. 2008) (emphasis added).

Juan's reliance on one sentence from our opinion in *Waknine* is misplaced. In the very same paragraph that Juan cites for the proposition that the § 3553(a) factors must be addressed "before" imposing sentence, we explained that the district court erred because it gave "no *contemporaneous* announcement of the calculated Guidelines range or satisfaction of the requirement that the sentence be reconciled for reasonableness in light of the § 3553(a) factors." *Id.* (emphasis added). The plain language of *Waknine* simply does not require the strict sequencing of events urged by Juan. Nor would such a stringent requirement advance any of the "important goals" of § 3553, namely "(1) informing the defendant of the reasons for his sentence, (2) permitting meaningful appellate review, (3) enabling the public to learn why the defendant received a particular sentence, and (4) guiding probation officers and prison officials in developing a program to meet the defendant's needs." *United States v. Villafuerte*, 502 F.3d 204, 210 (2d Cir. 2007) (citing S. Rep. No. 98-225, at 79–80 (1983)); *see also Gall v. United States*, 552 U.S. 38, 50 (2007) ("*After* settling on the appropriate sentence, [the court] must adequately explain the *chosen* sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.") (citation omitted)

(emphasis added).  Where, as here, the district court adequately and contemporaneously explains its sentencing rationale, we will not find procedural error.  To hold otherwise would needlessly elevate form over substance.

**AFFIRMED.**