**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

　　　　v.

JOSE RAYMUNDO CONTRERAS-
HERNANDEZ,
　　　　　　　*Defendant-Appellant.*

No. 09-50009

D.C. No.
3:07-CR-03190-
JAH-1

OPINION

On Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Submitted February 4, 2010*
Pasadena, California

Filed January 3, 2011

Before: Andrew J. Kleinfeld, Kim McLane Wardlaw, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Kleinfeld.

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Candis L. Mitchell, Federal Defenders of San Diego, Inc., for the defendant-appellant.

Peter J. Mazza, Assistant U.S. Attorney, San Diego, California, for the plaintiff-appellee.

**OPINION**

KLEINFELD, Circuit Judge:

We address several sentencing issues, the most substantial of which is whether California solicitation to commit murder[1] is a crime of violence for purposes of a Guidelines enhancement.

## I. Facts

Jose Raymundo Contreras-Hernandez was convicted after jury trial of being an alien found in the United States after a previous deportation.[2] The base offense level for this crime is 8,[3] but the Sentencing Guidelines impose a sixteen-level increase, to 24, if the alien's prior deportation followed a conviction for a felony that was a crime of violence.[4] This upward adjustment was imposed on Contreras-Hernandez, contributing to his sixty-three months of imprisonment. For his cri-

---

[1]Cal. Penal Code § 653f(b).

[2]8 U.S.C. § 1326.

[3]U.S.S.G. § 2L1.2(a).

[4]U.S.S.G. § 2L1.2(b)(1)(A)(ii).

minal history category of III, a base offense level of 8 generates six to twelve months of imprisonment, but a 24 generates sixty-three to seventy-eight months. In addition to the sentencing guidelines increase, Contreras-Hernandez's statutory maximum was increased from two years to twenty years because the solicitation of murder was deemed an aggravated felony.[5]

Contreras-Hernandez had been convicted of soliciting the murder of his wife.[6] According to his sentencing memorandum, the person he had tried to hire to kill her turned out to be an undercover police informant. He had been sentenced to six years of imprisonment and had served two, when he was paroled and deported. A month later, the border patrol apprehended Contreras-Hernandez in California. His attorney said at sentencing that Contreras-Hernandez's wife had left their son with Contreras-Hernandez's brother and gone off to Georgia, and now Contreras-Hernandez's brother was unable to care for the boy, so Contreras-Hernandez was coming to the United States only to pick up his son and take him back to Mexico.

The district court treated the statutory maximum as twenty years, applied the guidelines adjustment for deportation after conviction for a crime of violence, and sentenced Contreras-Hernandez to the bottom end of his guidelines range, sixty-three months.

## II.  Analysis

Contreras-Hernandez argues: (1) solicitation of murder is not a crime of violence; (2) the district judge did not adequately consider under 18 U.S.C. § 3553 the mitigating reason for his return to the United States; (3) the indictment was flawed because it did not set out the date of his deportation;

---

[5]8 U.S.C. § 1326(a), (b)(2).

[6]Cal. Penal Code § 653f(b).

and (4) the increase in the statutory maximum in 8 U.S.C. § 1326 for an aggravated felony, based on judicial findings of fact rather than indictment and a right to jury trial on the aggravating factor, is unconstitutional.

## 1.  Crime of violence

[1] The question of whether solicitation of murder is a crime of violence is not yet controlled by precedent precisely on point, though the question is surrounded by precedent that makes the answer clear.

Contreras-Hernandez was convicted under California Penal Code § 653f(b): "Every person who, with the intent that the crime be committed, solicits another to commit or join in the commission of murder shall be punished by imprisonment in the state prison for three, six, or nine years." Sentencing Guideline § 2L1.2(b)(1)(A)(ii) provides for a sixteen-level upward adjustment if the felony preceding deportation was a "crime of violence." We review de novo whether a crime qualifies as a "crime of violence."[7]

[2] The guidelines commentary defines murder as a crime of violence,[8] and provides that convictions to be counted as crimes of violence "include the offenses of aiding and abet-

---

[7]*Prakash v. Holder*, 579 F.3d 1033, 1035 (9th Cir. 2009).

[8]The guidelines commentary reads:

"Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2(b)(1) cmt. n.1(B)(iii).

ting, conspiring, and attempting" as well as the offenses desig-nated.[9] But "soliciting" is not on this list. Contreras-Hernandez argues that we should follow the reasoning of the Sixth Circuit in *United States v. Dolt*.[10] *Dolt* holds that solici-tation to traffic in cocaine is not a controlled substance offense for purposes of the career offender enhancement,[11] because solicitation differs from and is less serious than aid-ing and abetting, conspiring or attempting, and is not enumer-ated in that list.

**[3]** We reach a contrary conclusion. We do not apply the rule of interpretation,[12] *expressio unius est exclusio alterius*, because the Guidelines provide that "the term 'includes' is not exhaustive."[13] That is an express rejection of the "*expressio unius . . .*" inference from the word "includes."[14] The catchall language in the definition of crime of violence, "or any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of anoth-er," suggests a broader reach than the listed offenses.[15] We held in *United States v. Cox* that solicitation of murder under

---

[9]The guidelines commentary reads: "Prior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abet-ting, conspiring, and attempting, to commit such offenses." U.S.S.G. § 2L1.2(b)(1) cmt. n.5.

[10]27 F.3d 235 (6th Cir. 1994).

[11]U.S.S.G. § 4B1.1.

[12]We have explained that the "*expressio unius*, or *inclusio unius*, princi-ple . . . is a rule of interpretation, not a rule of law." *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1312-13 (9th Cir. 1992).

[13]U.S.S.G. § 1B1.1 cmt. n.2.

[14]We have distinguished controlled substance cases that say otherwise from cases concerning crimes of violence. *Prakash v. Holder*, 579 F.3d 1033, 1038 (9th Cir. 2009) (explaining that the "statute that concerns us in this case, 18 U.S.C. § 16(b)," which defines "crimes of violence," "does not itself contain a provision listing some inchoate crimes, such as attempt and conspiracy, to the exclusion of others. The legal principle that led to the results in these controlled substances cases does not apply here.").

[15]*United States v. Shumate*, 329 F.3d 1026, 1030-31 (9th Cir. 2003).

a materially similar state statute is indeed a crime of violence because it "involves a high degree of threat of physical force" and "a serious potential risk of physical injury to another."[16] *Cox* interpreted the "use, attempted use, or threatened use of physical force against another" in the guidelines adjustment for a felon in possession of a firearm,[17] the words of which are identical to those in the catchall provision for an alien found in the United States having previously been deported.[18] And in *United States v. Shumate*, building on the reasoning in *Cox*, we held that solicitation of delivery of a controlled substance suffices for the career criminal sentence enhancement because solicitation "presents a high degree of threat" that the substance will be delivered.[19]

---

[16]74 F.3d 189, 190 (9th Cir. 1996).

[17]The guidelines read:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

[18]The commentary for the § 2L1.2 Offenses Involving Immigration, Naturalization, and Passports definition of "crime of violence" includes a list of enumerated crimes as well as "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2(b)(1) cmt. n.1(B)(iii).

The definition of "crime of violence" in § 4B1.2 on career offenders reads "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) . . . involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

[19]*United States v. Shumate*, 329 F.3d 1026, 1030-31 (9th Cir. 2003).

**[4]** The Tenth Circuit followed our reasoning, not *Dolt*'s, in *United States v. Cornelio-Pena*.[20] *Cornelio-Pena* holds that solicitation to commit burglary is a violent felony for purposes of the same statute of conviction, 8 U.S.C. § 1326, and guideline, § 2L.1.2, that apply to Contreras-Hernandez: "Because the *mens rea* and *actus reus* required for solicitation are similar to those required for aiding and abetting, conspiracy and attempt, we conclude that solicitation is sufficiently similar to the offenses listed in the application note to be encompassed by the note."[21]

Likewise, in *Prakash v. Holder*[22] we held that *Cox* applies to the aggravated felony provision in 8 U.S.C. § 1101(a)(43)(F). *Prakash* holds that solicitation of assault and rape under California Penal Code § 653f(a) and (c) is a "crime of violence," because solicitation inherently presents a substantial risk and high degree of threat of violence.[23] *Prakash* compels the result in this case, because the guideline commentary for 8 U.S.C. § 1326 convictions provides that " 'aggravated felony' has the meaning given to that term in 8 U.S.C. § 1101(a)(43)."[24] This guideline provision makes *Prakash* indistinguishable from this case. Because solicitation is an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), and U.S.S.G. § 2L1.2(b)(1)(C) cmt. n.3(A) says that aggravated felony in U.S.S.G. § 2L1.2(b)(1)(C) has the same meaning as in 8 U.S.C. § 1101(a)(43), our holding that solicitation of a crime of violence is itself a crime of violence under § 1101(a)(43)(F) compels the conclusion that solicitation of murder is also a crime of violence under § 2L1.2(b)(1)(A)(ii).

**[5]** Contreras-Hernandez's argument for a distinction

---

[20]*United States v. Cornelio-Pena*, 435 F.3d 1279 (10th Cir. 2006).

[21]*Id.* at 1286.

[22]579 F.3d 1033 (9th Cir. 2009).

[23]*Id.* at 1036-37.

[24]U.S.S.G. § 2L1.2(b)(1)(C) cmt. n.3(A).

based on the ineffectuality of his solicitation does not distinguish solicitations from the listed equivalents. His practical problem of hiring a hit man who turned out to be a police informant does not distinguish him from criminal conspirators who unknowingly recruit police undercover agents into their midst. That the criminals may be poor judges of character, when they seek criminal assistance for their criminal acts, does not alter their criminal purpose and motive, or their criminal act.

### 2.  *Mitigation*

**[6]** Contreras-Hernandez argues that the district court erred by failing to consider his mitigating reason for coming into the United States illegally, bringing his son back to Mexico when Contreras-Hernandez's brother could no longer care for him. He correctly points out that the district court must consider the factors set out in 18 U.S.C. § 3553(a) when imposing a sentence.

The statute says that a court must "consider"[25] the listed factors, not that it must reduce the sentence below the guidelines range if any mitigating factor is present. "A within-Guidelines sentence ordinarily needs little explanation," and the district court "need not tick off each of the § 3553(a) factors to show that it has considered them," nor articulate "how each § 3553(a) factor influences its determination of an appropriate sentence."[26]

**[7]** The record satisfactorily demonstrates that the district court, taking Contreras-Hernandez's attorney's representation regarding his motive as true, considered it. The district court explicitly referenced the § 3553(a) factors, Contreras-

---

[25]The statute reads: "The court, in determining the particular sentence to be imposed, shall *consider*" the factors. 18 U.S.C. § 3553(a) (emphasis added).

[26]*United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008).

Hernandez's "personal history and characteristics," and the "circumstances of this arrest" when making its sentencing determination. This demonstrates that the district court judge "considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority,"[27] which satisfies the requirements of our case law. Contreras-Hernandez had tried to hire a hit man to kill his wife, yet got the bottom end of the guideline range, even though the prosecutor and probation officer recommended the middle of the range. Since defense counsel's argument and Contreras-Hernandez's allocution focused on his beneficent motive for illegal reentry, that argument is a likely explanation for the district court's decision to choose the bottom of the range. That the district court listened to counsel and thought about the motive is demonstrated by the court's comment after imposing the sixty-three-month sentence that coming back to the United States to retrieve his son, even under the worst circumstances for his son, would land Contreras-Hernandez back in jail.

### 3. *Sufficiency of the indictment*

Contreras-Hernandez argues that his sentence had to be limited to a maximum of two years under subsection (a) of 8 U.S.C. § 1326, not the ten- and twenty-year maximums under subsection (b), because the indictment did not allege the date of his prior deportation. The indictment alleged the date he was found in the United States, that he had "previously" been deported, and that his deportation was "subsequent to October 28, 2005." But the indictment did not state the deportation date itself.

[8] Contreras-Hernandez correctly cites *United States v. Covian-Sandoval*[28] for the proposition that for an element of § 1326(b)(2) to increase to the maximum sentence, the predi-

---

[27]*Rita v. United States*, 551 U.S. 338, 356 (2007).

[28]462 F.3d 1090, 1097 (9th Cir. 2006).

cate felony conviction must be prior to the predicate deporta-
tion, not subsequent to it, since the statute says the deportation
has to be "subsequent to" the felony conviction. He argues
that under *Apprendi v. New Jersey*[29] and *Blakely v. Washington*,[30]
the indictment must state the date of the deportation, because
it is an element of the crime, so that failure to state the date
is structural error and harmless-error analysis cannot be
applied.

**[9]** Our decisions in *United States v. Mendoza-Zaragoza*[31]
and *United States v. Garcia-Hernandez*[32] compel rejection of
this argument. We held in *Mendoza-Zaragoza* that "an indict-
ment will support the 1326(b) sentence enhancement if it
alleges a removal date, thus enabling a sentencing court to
compare that date to the dates of any qualifying felony con-
victions to determine whether the sentence-enhancing
sequence is satisfied."[33] Subsequently, in *United States v.
Garcia-Hernandez*, we considered an indictment in the identi-
cal form as Contreras-Hernandez's: Both indictments alleged
the date the alien was found in the United States, and alleged
that the removal was subsequent to a designated date, but did
not state the removal date.[34] We held that even though the
indictment did not state the removal date, it sufficed to sup-
port an enhanced sentence under subsection (b) of § 1326,
because "it contains enough information to allow the district

---

[29]530 U.S. 466 (2000).

[30]542 U.S. 296, 301-02 (2004).

[31]567 F.3d 431 (9th Cir. 2009).

[32]569 F.3d 1100 (9th Cir. 2009).

[33]567 F.3d 431, 434 (9th Cir. 2009).

[34]Contreras-Hernandez's indictment states that Contreras-Hernandez
"was removed from the United States subsequent to October 28, 2005."
In *Garcia-Hernandez*, the indictment stated that "defendant OSCAR
JAVIER GARCIA-HERNANDEZ was removed from the United States
subsequent to April 29, 2003." *United States v. Garcia-Hernandez*, 569
F.3d 1100, 1103 (9th Cir. 2009).

court to establish at sentencing that the alien's removal occurred after the qualifying conviction."**[35]**

### 4. *Apprendi*

**[10]** Subsection (b) of 8 U.S.C. § 1326 raises the maximum sentence from two years to ten or twenty, based on prior convictions. The court rather than a jury makes the requisite findings of fact that increase the sentence. Because Contreras-Hernandez's crime was deemed to be an aggravated felony, this subsection increased his maximum sentence to twenty years. Contreras-Hernandez argues such judicial fact-finding is unconstitutional under *Apprendi v. New Jersey*,**[36]** though conceding that under our current binding precedent the law is otherwise. This argument is foreclosed by *Almendarez-Torres v. United States***[37]** and *United States v. Beng-Salazar*.**[38]**

### III.   Conclusion

**[11]** Solicitation of murder is an "aggravated felony" for purposes of 8 U.S.C. § 1236(b)(2) and a "crime of violence" for purposes of sentencing guideline § 2L1.2(b)(1)(A)(ii). The district court performed its obligation to consider the Section 3553 factors.

**AFFIRMED.**

---

**[35]***Id.*

**[36]**530 U.S. 466 (2000).

**[37]**523 U.S. 224, 226-27 (1998) (holding that a prior conviction that triggers an increased maximum sentence need not be proved to a jury).

**[38]**452 F.3d 1088, 1091 (9th Cir. 2006) (stating that *Almendarez-Torres* has not been overruled).