**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

VENANCIO ROJAS-PEDROZA,
  *Defendant-Appellant*.

No. 11-50379

D.C. No.
3:10-cr-03309-
DMS-1

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

VERNANCIO ROJAS-PEDROZA, AKA
Venancio Rojas-Pedroza,
  *Defendant-Appellant*.

No. 11-50381

D.C. No.
3:08-cr-02715-
DMS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
December 3, 2012—Pasadena, California

Filed May 28, 2013

Before: Marsha S. Berzon, Richard R. Clifton,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction and sentence for illegal reentry in a case in which the defendant collaterally challenged the validity of the removal order underlying his 8 U.S.C. § 1326(b) sentencing enhancement and argued that the district court violated his Sixth Amendment right to confrontation by admitting documents from his immigration A-file.

The panel noted that even if the defendant succeeded on his collateral challenge to his 2010 removal order, which was a reinstatement of a 1998 removal order, it would not affect the indictment's charge under 8 U.S.C. § 1326(a) because the government relied on evidence of removals other than the 2010 removal order to prove its case.

The panel observed that the record is ambiguous as to whether in the 1998 proceedings the immigration judge failed to inform the defendant of relief in the form of pre-conclusion voluntary departure for which the defendant claims he was apparently eligible. The panel concluded that the defendant

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

failed to show prejudice because the defendant's equities would not have caused an IJ to grant him voluntary departure in 1998.

Rejecting the defendant's contention that admission of statements contained in documents from his A-file violated the Sixth Amendment's Confrontation Clause, the panel disagreed that the approach set forth in *United States v. Orozco-Acosta*, 607 F.3d 1156 (9th Cir. 2010), is inconsistent with subsequent decisions of the Supreme Court. The panel held that statements in the 1998 warrant of removal, statements in a Notice of Decision/Intent to Reinstate Prior Order, and the IJ's written order from the 1998 proceedings are all non-testimonial.

The panel held that the district court did not err in denying the defendant a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The panel also rejected the defendant's contention that in light of a Sentencing Guidelines amendment that was scheduled to take effect after the defendant's sentencing, it was substantively unreasonable for the district court to impose a term of supervised release. The panel wrote that there is no language in the Guidelines suggesting that the new supervised release provision, U.S.S.G. § 5D1.1(c) (2011), has retroactive effect.

**COUNSEL**

James Fife, Federal Defenders of San Diego, Inc., San Diego, California, for Defendant–Appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, and Kyle W. Hoffman (argued), Assistant United States Attorney, San Diego, California, for Plaintiff–Appellee.

**OPINION**

IKUTA, Circuit Judge:

Venancio Rojas-Pedroza challenges his conviction and sentence under 8 U.S.C. § 1326(a) and (b) for being an alien found in the United States after removal. We hold that the district court was correct to reject Rojas's collateral challenge to the validity of the removal order underlying his § 1326(b) sentencing enhancement. We also reject Rojas's arguments that the district court violated his Sixth Amendment right to confrontation by admitting documents from his immigration file, and his claims that the district court erred procedurally and substantively in imposing a sentence.

**I**

We begin with an overview of Rojas's relevant immigration and criminal background before turning to the proceedings in this case.

## A

Rojas entered the United States illegally in 1982, when he was fourteen. The record shows that since that time, he has lived intermittently in the United States, but never had legal status.[1] His parents and his two daughters live in Mexico, although several of his siblings reside in the United States.

When in the United States, Rojas was convicted of a number of criminal offenses. In October 1993, he was convicted of unlicensed driving, possession of an open container while driving, and the failure to pay a fine. In April 1994, he was charged with and later convicted of driving under the influence. In August 1995, he was convicted of unlicensed driving. In March 1997, he incurred a second conviction for driving under the influence. Finally, in September 2008, he was convicted of aiding and abetting the transportation of illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II), which is an aggravated felony for purposes of immigration law. 8 U.S.C. § 1101(a)(43)(N). As a result of that conviction he was

---

[1] Sometime prior to April 1991, Rojas applied for temporary resident status as a Special Agricultural Worker under the provisions of 8 U.S.C. § 1160. His application was denied, because the affidavits he submitted to prove he had performed seasonal agricultural services in the United States for the required length of time, *see* §§ 1160(a)(1)(B)(ii) and (b)(3)(B)(i), were signed by an individual convicted of fraud in connection with the Special Agricultural Worker program, and the affidavits were deemed not credible.

sentenced to two years in prison and two years of supervised release.[2]

In addition to these criminal convictions, Rojas was removed or deported from the United States on five occasions (June 1997, February 1998, November 2004, May 2007, and April 2010). Rojas illegally returned to the United States after each of these removals or deportations.

During the hearing for the June 1997 removal, Rojas admitted to entering the United States illegally. After concluding that Rojas was removable, the IJ considered whether he was eligible for relief from removal, including voluntary departure. In response to the IJ's questions, Rojas and his attorney stated that Rojas did not have any convictions,[3] that he had never been to jail, that his Special Agricultural Worker application had been denied, that he was unmarried, that he did not have any children, and that his family was in Mexico. The IJ ordered Rojas removed and denied his request for voluntary departure "based upon [Rojas's] lack of ties to the United States."

---

[2] In addition to his criminal convictions, Rojas was arrested or cited on several other occasions. In June 1995, he was cited for driving under the influence and unlicensed driving. In June 1997, he was arrested by the Drug Enforcement Administration for possession of heroin. In 2004, he was arrested for assault. Finally, in May 2007, the San Diego police arrested Rojas for possession of methamphetamine and possession of burglary tools.

[3] Rojas's attorney was mistaken. At the time, Rojas had four misdemeanor convictions, including two convictions for driving under the influence.

Rojas reentered the United States illegally after the June 1997 removal and was detected in the country again in 1998. At the hearing for his February 1998 removal, Rojas correctly informed the IJ that he had been "kicked out" in June 1997, but he also erroneously stated that he had been granted voluntary departure instead of being removed. Based on Rojas's illegal re-entry, the IJ found him removable. The IJ then asked Rojas a series of questions to determine whether he was eligible for relief from removal. In response to these questions, Rojas stated that his parents were not United States citizens or legal residents, that he was not married, and that he did not have children who were United States citizens. The IJ ordered Rojas removed, and determined that Rojas was ineligible for voluntary departure because he had previously been granted voluntary departure, and then illegally returned.

Rojas again returned to the United States illegally. In October 2009, Rojas's 1998 removal order was reinstated and used as a basis for a subsequent removal in April 2010.

## B

We now turn to the proceedings in this case. After his April 2010 removal, Rojas was again found in the United States illegally, and the government indicted him in August 2010 under 8 U.S.C. §§ 1326(a) and (b).[4] Relevant here,

---

[4] 8 U.S.C. §§ 1326(a) and (b) state, in pertinent part:

(a) In general

Subject to subsection (b) of this section, any alien who—

§ 1326(a) provides criminal penalties for an alien who was:
(1) deported or removed from the United States; and (2)
thereafter "enters, attempts to enter, or is at any time found
in, the United States" without the express consent of the
Attorney General. Section 1326(b)(2) establishes enhanced
penalties for an alien who was described in § 1326(a) and
"whose removal was subsequent to a conviction for
commission of an aggravated felony." In other words, under
§§ 1326(a) and (b)(2), an alien is guilty of illegal reentry and
subject to enhanced penalties if the alien was: (1) convicted

---

(1) has been denied admission, excluded, deported,
or removed or has departed the United States while
an order of exclusion, deportation, or removal is
outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found
in, the United States, unless (A) prior to his
reembarkation at a place outside the United States
or his application for admission from foreign
contiguous territory, the Attorney General has
expressly consented to such alien's reapplying for
admission . . .

shall be fined under Title 18, or imprisoned not more
than 2 years, or both.

(b) Criminal penalties for reentry of certain removed
aliens

Notwithstanding subsection (a) of this section, in
the case of any alien described in such
subsection— . . .

(2) whose removal was subsequent to a conviction
for commission of an aggravated felony, such alien
shall be fined under such title, imprisoned not
more than 20 years, or both . . . .

of an aggravated felony, (2) subsequently removed from the United States, and (3) thereafter illegally reentered or was found in the United States. *See United States v. Covian-Sandoval*, 462 F.3d 1090, 1097 (9th Cir. 2006).

The indictment charged Rojas under §§ 1326(a) and (b), and alleged that Rojas was an alien who had been removed from the United States after December 12, 2008, and was subsequently found in the United States. These allegations supported both the government's § 1326(a) charge (which required proving that Rojas was removed from the United States and subsequently found in the United States) and its § 1326(b) charge (which, under § 1326(b)(2), required proving that Rojas's removal from the United States occurred *after* his conviction for an aggravated felony in September 2008).

Before trial, Rojas moved to dismiss the indictment on the ground that his April 2010 removal was invalid. Because the April 2010 removal was the only removal that occurred after his conviction for an aggravated felony in September 2008, it was necessary to support the sentencing enhancement under § 1326(b)(2).

After the district court denied this motion, Rojas filed a second pretrial motion to bar the admission of documents from the individual case file maintained by the Department of Homeland Security (referred to as an "alien file" or "A-File") for the purpose of proving alienage. The documents at issue here are a "Warrant of Removal/Deportation," a "Notice of Intent/Decision to Reinstate Prior Order," and an "Order of the Immigration Judge." The "Warrant of Removal/Deportation" states that Rojas, "who entered the United States at Otay Mesa, CA on December 6, 1991 is

subject to removal/deportation from the United States, based upon a final order by: an immigration judge in exclusion, deportation, or removal proceedings." The warrant is signed by an INS official. The back of the warrant contains information "[t]o be completed by [the] Service officer executing the warrant." It lists the "port, date, and manner of removal," includes a photo and a fingerprint with the captions "photograph of alien removed" and "right index fingerprint of alien removed," respectively, and is signed by a different INS official.

The second document at issue, the "Notice of Intent/Decision to Reinstate Prior Order," consists of two parts. The first part notified Rojas that he was "an alien subject to a prior order of deportation/ exclusion/ removal entered on February 23, 1998," that he "was removed on May 21, 2007," and that he illegally entered in 2007. It also contains Rojas's signature, indicating that he was not contesting this information. The second part of this document records the immigration officer's final decision that Rojas was subject to removal.

The third document at issue, the "Order of the Immigration Judge," summarizes the IJ's oral decision from Rojas's 1998 proceedings. The written order contains checked-off boxes indicating that Rojas was "ordered removed from the United States to Mexico," and that his "application for voluntary departure was denied." The document also states that Rojas "waived" appeal.

The district court denied Rojas's motion to suppress these documents. Rojas proceeded to trial and the jury convicted him on all counts.

At sentencing, Rojas argued that he was entitled to a Sentencing Guidelines adjustment for acceptance of responsibility because he admitted he was a Mexican citizen when apprehended and later admitted to immigration agents that he had been previously deported or removed. The district court declined to make a downward adjustment for acceptance of responsibility, stating that "Rojas did not accept responsibility, he elected to stand on his constitutional rights, hold the government to its burden of proof to establish beyond a reasonable doubt all the elements in the allegation." In particular, the district court noted that Rojas had challenged whether he had actually been removed, given that the government agent who effectuated the removal and witnessed Rojas cross the border had inadvertently failed to sign the "witness of departure line" in Rojas's warrant.

As a result of the § 1326 conviction, Rojas was sentenced to 51 months' imprisonment, followed by three years of supervised release. The district court also revoked Rojas's supervised release from his 2008 conviction for aiding and abetting the transportation of illegal aliens, and sentenced him to an additional 7 months' custody to be served consecutively to his § 1326 sentence. Rojas timely appealed.

## II

We have jurisdiction over Rojas's appeal of his conviction and the district court's revocation of supervised release under 28 U.S.C. § 1291. *United States v. Vallee*, 677 F.3d 1263, 1264 (9th Cir. 2012). We have jurisdiction under 18 U.S.C. § 3742 to review Rojas's sentence. *United States v. Juan*, 704 F.3d 1137, 1140 (9th Cir. 2013).

## A

We begin with Rojas's appeal of the district court's denial of his motion to dismiss the indictment. Rojas's challenge to the indictment is based on his claim that the April 2010 removal is invalid. He reasons as follows: (1) the April 2010 removal is a reinstatement of the 1998 removal order; (2) the 1998 removal order is invalid because the IJ in the 1998 removal proceeding did not advise Rojas of his eligibility to apply for relief under 8 U.S.C. § 1229c(a)[5] (generally referred to as "pre-conclusion voluntary departure"); and (3) because the 1998 removal order is invalid, it cannot support the April 2010 reinstatement. We review the district court's rejection of this argument de novo. *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1053 (9th Cir. 2003).

## 1

As a threshold matter, we note that even if Rojas succeeded on his collateral challenge to the April 2010 removal order, it would not affect the indictment's § 1326(a) charge.

Although Rojas's collateral challenge to his prior removal order, if successful, would preclude the government from

---

[5] 8 U.S.C. § 1229c(a) provides that:

> (1) The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to [removal] proceedings . . . or prior to the completion of such proceedings, if the alien is not deportable" for reason of an aggravated felony or terrorist activity.

relying on that removal at trial, *United States v. Medina*, 236 F.3d 1028, 1031 (9th Cir. 2001), it would not necessarily invalidate the indictment.  Generally, an indictment is sufficient so long as it sets forth all the elements necessary to constitute the offense.  *United States v. Milovanovic*, 678 F.3d 713, 727 (9th Cir. 2012) (en banc).  However, where a defendant is successful in collaterally attacking the only prior removal that supported the government's case, we have held that dismissal of the indictment is appropriate. *See, e.g.*, *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006).  This is because, under those narrow circumstances, there would be no question that the government lacked the evidence to convict the defendant.  *See United States v. Phillips*, 367 F.3d 846, 855 n.25 (9th Cir. 2004) (noting that a district court may dismiss an indictment where the facts are undisputed); *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 842 (1987).

The result is different in this case.  Here, the indictment tracks § 1326(a)'s elements by alleging that Rojas was an alien who was deported or removed from the United States and was subsequently found in the United States without authorization.  The indictment does not rely on a particular removal for the § 1326(a) charge, and at trial the government introduced and relied on evidence of Rojas's 1997 removal order as well as the April 2010 removal to prove the elements of the § 1326(a) charge.  Because the government relied on removals other than the April 2010 removal to support its case, we reject Rojas's argument that the court erred in not dismissing the § 1326(a) charge in the indictment.

**2**

We must still consider, however, whether the district court erred in not dismissing the § 1326(b) charge in the indictment. *See United States v. W.R. Grace*, 504 F.3d 745, 751 (9th Cir. 2007) (recognizing that an indictment may be dismissed in part).

In order to subject a defendant to § 1326(b)'s enhanced penalties, the government must allege in the indictment and prove at trial that the defendant was removed after a particular date. *United States v. Contreras-Hernandez*, 628 F.3d 1169, 1175 (9th Cir. 2011).[6] To that end, the indictment alleged that Rojas "was removed from the United States subsequent to December 12, 2008." Because it is undisputed that the April 2010 removal was the only removal that occurred after this date, the government cannot prove the § 1326(b) charge if Rojas successfully challenges that removal. Accordingly, we turn to Rojas's collateral challenge to the April 2010 removal, which was based on a reinstatement of the 1998 removal order.

In order to make a collateral challenge to a prior removal or deportation order, a defendant must satisfy 8 U.S.C. § 1326(d), which requires the defendant to demonstrate that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued

---

[6] At sentencing, the district court determines, based on the date alleged and proved by the government, whether "the alien's removal occurred after [a] qualifying conviction" that triggers § 1326(b)'s enhanced penalties. *Contreras-Hernandez*, 628 F.3d at 1174–75 (internal quotation marks omitted).

improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." § 1326(d).[7]

Under our case law, a defendant can meet all these requirements by establishing that the IJ failed to inform the defendant "of his or her apparent eligibility" for relief as required by 8 C.F.R. § 1240.11(a)(2),[8] and that the defendant had plausible grounds for relief. *See United States v. Vidal-Mendoza*, 705 F.3d 1012, 1014–16 (9th Cir. 2013).

---

[7] 8 U.S.C. § 1326(d) states:

> Limitation on collateral attack on underlying deportation order
>
> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that—
>
>> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>>
>> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>>
>> (3) the entry of the order was fundamentally unfair.

[8] Section 1240.11(a)(2) states:

> The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing . . . .

We recently explained why an IJ's failure to inform an alien regarding "apparent eligibility" for relief fulfills the requirements of §§ 1326(d)(1) and (2), and part of § 1326(d)(3). *Id.* First, the IJ's error excuses the alien from the administrative exhaustion requirement of § 1326(d)(1), because "we deem the alien's waiver of the right to an administrative appeal to have been insufficiently 'considered and intelligent.'" *Id.* at 1015 (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049–50 (9th Cir. 2004)). Second, the same failure to inform an alien regarding "apparent eligibility" for relief also "deprive[s] the alien of the opportunity for judicial review," § 1326(d)(2), because "an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). Finally, this same error partially satisfies the requirement of § 1326(d)(3), that the entry of the removal order was "fundamentally unfair." A removal order is "fundamentally unfair," if "(1) [the alien's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Ubaldo-Figueroa*, 364 F.3d at 1048 (internal quotation marks omitted). We have concluded that an IJ's failure to advise an alien of "apparent eligibility" to apply for relief is a due process violation, *United States v. Lopez-Velasquez*, 629 F.3d 894, 897 (9th Cir. 2010) (en banc), and thus satisfies the first prong of § 1326(d)(3).

For purposes of this analysis, eligibility for relief is "apparent" where "the record, fairly reviewed by an individual who is intimately familiar with the immigration laws[,] . . . raises a reasonable possibility that the petitioner may be eligible for relief." *Lopez-Velasquez*, 629 F.3d at 897

(internal quotation marks omitted). This inquiry "focuse[s] on whether the factual circumstances in the record before the IJ suggest that an alien could be eligible for relief." *Id.* at 900. Because "IJs are not expected to be clairvoyant," we have explained that an IJ need not advise an alien of possible relief when the record lacks such a factual basis. *Id* As a result, "[u]ntil the alien himself or some other person puts information before the judge that makes such eligibility apparent," the IJ's duty to advise the alien "does not come into play." *Id.*

Where an IJ failed to advise an alien "of his or her apparent eligibility" for relief, 8 C.F.R. § 1240.11(a)(2), the alien must still establish prejudice under the second prong of § 1326(d)(3). This requires the alien to make an additional showing and demonstrate "plausible grounds" for relief. *Gonzalez-Valerio*, 342 F.3d at 1054. "Where the relevant form of relief is discretionary, the alien must make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011) (internal quotation marks omitted). In determining whether the alien has made this showing, we apply a two-step process. First, we identify the factors relevant to the IJ's exercise of discretion for the relief being sought. *See id.* at 1089–90. Next, we determine whether, "in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* at 1089 (internal quotation marks, alterations, and citation omitted). In making this determination, we are not concerned with general statistics. *Id.* Instead, we focus on whether aliens

with similar circumstances received relief.  *See id.* at 1091 n.17.

We applied this two-step approach in *Barajas-Alvarado*. There, the defendant argued that the IJ erroneously failed to inform him about the opportunity to withdraw his application for admission.  *Id.* at 1089.  Because an immigration officer's authority to grant this relief is discretionary, we began by identifying the factors relevant to the exercise of such discretion.  *Id.*  In this regard, we noted that the field manual applicable to immigration officers set forth six factors, including seriousness of the immigration violation, previous findings of inadmissibility, and intent to violate the law.  *Id.* at 1090.  We next considered the specific circumstances of the defendant's case.  There, the defendant had conceded that he deliberately presented false documents, had been removed twice, and had been subject to multiple findings of inadmissibility.  *Id.* at 1090.  Applying the relevant factors to the specific circumstances of the defendant's case, we concluded that it was not plausible that the IJ would have exercised discretion in the defendant's favor.  *Id.* at 1090–91. In doing so, we rejected the defendant's argument that it was plausible he would have received discretionary relief "as a matter of statistics," *id.* at 1091, and noted that we had previously considered statistical evidence that IJs grant discretionary relief applications "fifty percent of the time" to be insufficient to show plausibility of relief.  *Id.*  (quoting *United States v. Corrales-Beltran*, 192 F.3d 1311, 1138 (9th Cir. 1999)).  Finally, we rejected as inapposite the alien's citations to "two cases in which an alien . . . presented false documents and was granted withdrawal."  *Id.* at 1091 n.17. "Because [those] cases involve[d] aliens in very different factual circumstances, and the courts in those cases neither addressed nor explained why the alien was granted

withdrawal relief," we held that they did not help the defendant "carry his burden of showing it was plausible he would have been granted relief in his unique circumstances." *Id.*

**3**

We now apply § 1326(d)'s requirements to Rojas's challenge to his 1998 removal order.

Pursuant to § 1326(d), we begin by considering whether Rojas adequately established that the IJ failed to inform him of relief for which he claims he was apparently eligible. Here, the record is ambiguous. During the 1998 proceedings, Rojas informed the IJ that, during the 1997 proceeding he had "signed [his] voluntary deportation." Based on this testimony, "an individual who is intimately familiar with the immigration laws," *Lopez-Velasquez*, 629 F.3d at 896 (internal quotation marks omitted), could reasonably conclude that Rojas was not eligible for pre-conclusion voluntary departure in 1998 because he had previously received voluntary departure. *See* 8 U.S.C. § 1229c(c).[9] Nevertheless, the record also contained information suggesting that Rojas had *not* received voluntary departure in 1997. Specifically, the government lawyer noted that Rojas's file "reflects a removal on June 23, 1997."

---

[9] 8 U.S.C. § 1229c(c) states:

> The Attorney General shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so depart after having been found inadmissible under section 1182(a)(6)(A) of this title [aliens present in the United States without being admitted or paroled].

In light of the ambiguity in the record regarding whether Rojas had apparent eligibility for relief (which would satisfy § 1326(d)(1) and (2) and the first component of § 1326(d)(3)), we instead resolve Rojas's collateral challenge based on the more straightforward inquiry raised by the second component of § 1326(d)(3): whether Rojas was prejudiced by the IJ's failure to inform him of the possibility of applying for that relief.

Because pre-conclusion voluntary departure is a form of discretionary relief, we apply *Barajas-Alvarado*'s two-part test in determining prejudice.

Under the first step of this test, we identify the factors relevant to a discretionary grant of pre-conclusion voluntary departure. *Barajas-Alvarado*, 655 F.3d at 1089–90. The BIA has long established that "[i]n exercising discretion on a voluntary departure application" an IJ should take into account both favorable and unfavorable factors. *See Matter of Gamboa*, 14 I. & N. Dec. 244, 248 (BIA 1972) (citing cases). The BIA has consistently maintained this approach. *See Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999) (explaining that in deciding whether an alien warrants "a favorable exercise of discretion" with respect to pre-conclusion voluntary departure, an IJ should weigh both favorable and unfavorable equities); *see also Matter of Loera*, 2011 WL 6962801 (BIA Dec. 8, 2011). Favorable equities include long residence, close family ties to the United States, and humanitarian needs. *Arguelles-Campos*, 22 I. & N. Dec. at 817; *accord Gamboa*, 14 I. & N. Dec. at 248; *Loera*, 2011 WL 6962801. Unfavorable equities include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any

other evidence of bad character or the undesirability of the applicant as a permanent resident." *Arguellos-Campos*, 22 I. & N. Dec. at 817; *accord Gamboa*, 14 I. & N. Dec. at 248 (noting unfavorable factors "including the alien's prior immigration history, the nature of his entry or entries . . . his violations of the immigration and other laws, and the like").

Having identified the relevant factors, we now apply them to the unique circumstances of Rojas's case as of 1998. *Barajas-Alvarado*, 655 F.3d at 1089. Although Rojas came to the United States in 1982, there is no evidence that he continuously resided in this country. To the contrary, Rojas admits that he lived "off and on" in the United States. At the 1998 hearing, he stated that he had no immediate family who were United States citizens or residents. The record as of 1998 also showed that Rojas had a number of negative equities. His immigration history would have reflected two illegal entries, one in 1982 and a second entry in July 1997, just one month after his June 1997 removal. In addition, Rojas had four misdemeanor convictions for driving offenses between 1994 and 1997, including two convictions for driving under the influence.

Based on these factors, it is not plausible that an IJ would have exercised discretion in Rojas's favor at his 1998 hearing. The record showed no positive equities, other than Rojas's intermittent stays in the United States.[10] By contrast, the record showed numerous negative equities, including his illegal entries and convictions. In particular, the BIA has noted that driving under the influence is a serious negative factor. *Matter of Romero-Reyes*, 2010 WL 3780635 (BIA

---

[10] Rojas does not claim to have had relatives who were United States citizens or legal residents in 1998.

Sept. 9, 2010); *Matter of Butt*, 2010 WL 2846348 (BIA June 25, 2010).

Our review of BIA cases supports the conclusion that Rojas lacked a plausible case for relief.[11]  We note that the BIA has affirmed denials of voluntary departure in a number of cases in which the aliens had equities better than or similar to Rojas's equities.  *See, e.g.*, *Matter of Posadas-Posadas*, 2012 WL 371659 (BIA Jan. 18, 2012) (affirming a denial of voluntary departure as a matter of discretion where the alien was arrested twice for driving on a suspended license and once for driving under the influence, but had family ties to the United States); *Matter of Martinez-Hernandez*, 2011 WL 4446883 (BIA Sept. 6, 2011) (affirming a denial of voluntary departure as a matter of discretion where the alien had no criminal history but also no positive equities); *Matter of Herrera-Lopez*, 2003 WL 23521816 (BIA Oct. 31, 2003) (affirming a denial of voluntary departure as a matter of discretion where the alien had convictions for public nuisance, domestic battery, and possession of an open container in a vehicle, and the alien misrepresented his criminal history to the IJ); *Matter of Serna*, 20 I. & N. Dec. 579, 580, 586 (BIA 1992) (affirming a denial of voluntary departure as a matter of discretion where the alien had a single conviction for the possession of an altered immigration document, but had been residing in the United States for seven years and intended to marry a United States citizen with whom he had a child); *Matter of Lemhammad*, 20 I. & N. Dec. 316, 318, 324–26 (BIA 1991) (affirming a denial of

---

[11] The BIA reviews an IJ's exercise of discretion *de novo*.  8 C.F.R. §§ 1003.1(d)(3)(i), (ii); *Matter of A-S-B-*, 24 I. & N. Dec. 493, 496–97 (BIA 2008), *abrogated on other grounds by Huang v. Attorney Gen.*, 620 F.3d 372 (3d Cir. 2010).

voluntary departure as a matter of discretion where the alien had accepted money to take the exams of three college students and had a single assault conviction that resulted in a two day jail sentence, but had a United States citizen brother, desired to complete his education in the United States, and had entered the United States legally).

In cases where the BIA reversed a denial of voluntary departure, the aliens' equities were more favorable to them than Rojas's. *See, e.g.*, *Matter of Hernandez-Mata*, 2010 WL 4500914 (BIA Oct. 18, 2010) (reversing a denial of voluntary departure where the alien was arrested for intoxication, but had two United States citizen children and other family in the United States); *Matter of Maldonado-Hernandez*, 2010 WL 4509754 (BIA Oct. 22, 2010) (reversing a denial of voluntary departure when the alien was 19 years old, had lived in United States for ten years, and had no criminal record); *Matter of Hernandez-Garcia*, 2012 WL 1705671 (BIA Apr. 11, 2012) (reversing a denial of voluntary departure where the alien impersonated a United States citizen in attempt to procure a passport, but whose spouse and child were United States citizens).

Although Rojas points to cases in which aliens with serious criminal histories received voluntary departure, those cases involved aliens with significant family ties and other positive equities that Rojas lacks. For example, in *Matter of Gonzales-Figeroa*, 2006 WL 729784 (BIA Feb. 10, 2006), an alien with multiple assault convictions was granted voluntary departure. But in addition to a long history in the United States, the alien in *Gonzalez-Figeroa* also had a sister and two nieces who were United States citizens, a mother who was a permanent resident (whom the alien helped with rent and medical expenses), no other adverse immigration history,

and a pending visa application. *Id.* Similarly, in *Matter of Battista*, 19 I. & N. Dec. 484 (BIA 1987), an alien convicted of breaking and entering, grand theft, and possession of criminal tools was granted voluntary departure, but he had a United States citizen spouse who was pregnant at the time of the deportation hearing, United States citizen parents, and United States citizen siblings.

Indeed, the history of this very case confirms our conclusion that Rojas did not have a plausible claim for voluntary departure in 1998. In June 1997, the IJ declined to grant Rojas voluntary departure even though the IJ was not aware of Rojas's criminal history and Rojas had only one illegal entry at the time. By the 1998 hearing, Rojas had an additional illegal entry, which occurred in July 1997. Given that the first IJ declined to grant Rojas voluntary departure, it is not plausible that the second IJ, after learning of Rojas's additional unfavorable equities, would have granted Rojas voluntary departure in 1998.

In short, when considered in light of the relevant factors, Rojas's equities would not have caused an IJ to grant him voluntary departure in 1998. Therefore, we conclude that Rojas failed to carry his burden of establishing plausible grounds for relief. For this reason, Rojas has failed to show he suffered prejudice as a result of the IJ not informing him of the availability of pre-conclusion voluntary departure. Because Rojas was not prejudiced, the 1998 removal order was not "fundamentally unfair," and he cannot satisfy § 1326(d)(3). *See Ubaldo-Figueroa*, 364 F.3d at 1048. Accordingly, the district court did not err in rejecting Rojas's motion to dismiss the § 1326(b) charge in the indictment.

## B

We now turn to Rojas's challenge to the district court's denial of his motion in limine to bar the admission of several statements contained in documents from his A-file. He contends that these statements were testimonial and were thus admitted in violation of the Confrontation Clause of the Sixth Amendment. We review the district court's admission of the challenged statements de novo. *United States v. Nguyen*, 565 F.3d 668, 673 (9th Cir. 2009).

## 1

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This means that testimonial statements are inadmissible in criminal prosecutions unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). A statement is testimonial when it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (internal quotation marks omitted). Applying this principle to records in an alien's A-file, we have explained that the "mere possibility" that a record "could be used in a later criminal prosecution" does not render it testimonial. *United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 (9th Cir. 2010). Rather, there must be some additional showing that the primary purpose of the document is for use in litigation. *See id.* The "primary purpose" of a statement is determined objectively. *Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011). Thus, "the relevant

inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.*

In *Orozco-Acosta*, we held that warrants of removal are "not made in anticipation of litigation" but are prepared to record the movements of aliens. 607 F.3d at 1163. We have since extended *Orozco-Acosta* to a number of other A-file documents, concluding that they are likewise not made in anticipation of litigation and thus are non-testimonial. *See United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1034–35, 1034 n.3 (9th Cir. 2011) (holding that the Warrant of Removal, Warning to Alien Ordered Deported, and Order from the Immigration Judge, were non-testimonial).

Rojas contends that *Orozco-Acosta*'s approach is inconsistent with the Supreme Court's subsequent decisions in *Bryant* and *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011). According to Rojas, *Orozco-Acosta* erroneously (1) applied a subjective test to decide whether A-file documents are prepared in anticipation of litigation; (2) failed to take into account the formal context in which immigration records are prepared; and (3) improperly focused on the testimonial status of the documents as a whole. We consider each of these arguments in turn.

First, Rojas claims that because *Bryant* and *Bullcoming* prescribe an objective test to determining whether documents are prepared in anticipation of litigation, they overruled *Orozco-Acosta*, which, in his view, adopted a subjective test. We disagree, because *Orozco-Acosta* applied the correct objective approach to determining the status of A-file

documents. As we explained in *Orozco-Acosta*, because "[a] warrant of removal must be prepared in every case resulting in a final order of removal" and only "a small fraction of these warrants ultimately are used in immigration prosecutions," 607 F.3d at 1163–64, "'[w]arrants of deportation are produced under circumstances *objectively* indicating that their primary purpose is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation, not to prove facts for use in future criminal prosecutions.'" *Id.* at 1164 (emphasis added) (quoting *United States v. Torres-Villalobos*, 487 F.3d 607, 613 (8th Cir. 2007)).

Second, Rojas argues that *Bryant* and *Bullcoming* established a new rule that supersedes *Orozco-Acosta*'s approach: that courts should consider the formality of the circumstances in which a statement was made in determining whether its primary purpose was testimonial. Rojas is incorrect, because the Court's focus on the formality of a statement as part of its Confrontation Clause analysis is longstanding, and was taken into account by *Orozco-Acosta*. Since *Crawford*, the Supreme Court has noted that the formality of a statement is a relevant factor in determining whether the statement is testimonial. *Crawford*, 541 U.S. at 51 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."); *see also Davis v. Washington*, 547 U.S. 813, 827–28 (2006) (explaining that formality is one factor that can be relevant to determining a statement's primary purpose). *Bryant* and *Bullcoming* reaffirmed this approach, but did not hold that a statement's formality, standing alone, is sufficient to establish that the statement is testimonial. *See Bullcoming*, 131 S. Ct. at 2717; *Bryant*, 131 S. Ct. at 1160. *Orozco-Acosta*

acknowledged *Crawford*'s holding that "the 'core class' of testimonial statements" includes both formal and informal statements, 607 F.3d at 1160 (quoting *Crawford*, 541 U.S. at 51–52), and its approach to analyzing the immigration records at issue is consistent with *Bullcoming* and *Bryant*. We therefore remain bound by its holding.  *See Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003).

Finally, Rojas argues that *Bullcoming* and *Bryant* require a statement-by-statement approach to determining whether there is a Confrontation Clause violation, and claims that *Orozco-Acosta* failed to follow this direction.  We agree that the relevant question under the Confrontation Clause is whether an individual statement is testimonial, not whether an entire document is testimonial.  *See Bryant*, 131 S. Ct. at 1159–60 (indicating that trial courts should determine when a series of statements "transition from nontestimonial to testimonial" and exclude "the portions of any statements that have become testimonial" (internal quotation marks omitted)).  But when an immigration record is prepared under circumstances objectively indicating that the primary purpose of the record is non-testimonial, the ordinary contents of the record is likewise non-testimonial.  As noted in *Melendez-Diaz*, "[b]usiness and public records are generally admissible absent confrontation" because "having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial . . . they are not testimonial." 557 U.S. at 324.  Unlike the analysts' certificates in *Melendez-Diaz*, the immigration records at issue in *Orozco-Acosta* were not "prepared specifically for use at [the defendant's] trial," *id.*, and therefore we correctly determined that the ordinary contents of those records were non-testimonial.  607 F.3d at 1163.  Therefore, we reject this argument as well.

**2**

We now apply these principles to Rojas's contention that the district court erred in admitting statements from records in his A-file.

Rojas challenges two statements in the 1998 warrant of removal: (1) that he entered the United States on December 6, 1991 and (2) that he was subject to removal by order of an immigration judge.  In addition, he objects to "implied assertions" that the photograph and fingerprint attached to the warrant belong to him.  Because a warrant of removal is not made in anticipation of criminal litigation, *see Orozco-Acosta*, 607 F.3d at 1163, and the statements Rojas challenges are the ordinary contents of a warrant of removal, we conclude that they are non-testimonial.

Rojas also challenges statements contained in the Notice of Intent/Decision to Reinstate Prior Order.  In particular, he challenges the notice's statements that he was an unlawfully admitted alien, that he was subject to removal, that he was ineligible for relief, and that he was ordered removed to Mexico.

Like a warrant of removal, a Notice of Intent/Decision to Reinstate Prior Order is non-testimonial.  Immigration officers complete these notices to comply with an agency regulation that requires the government to apprise the alien of its determination that the alien is removable and to give the alien an opportunity to contest the government's determination. *See* 8 C.F.R. § 241.8.  Thus, although there is a "possibility," *Orozco-Acosta*, 607 F.3d at 1164, that the contents of these notices could be used in a criminal prosecution, the objective circumstances indicate that, like

warrants of removal, their primary purpose is to effect removals, not to prove facts at a criminal trial. *See Melendez-Diaz*, 557 U.S. at 324.

Furthermore, the specific statements that Rojas challenges are the ordinary contents of a Notice of Intent/Decision to Reinstate Prior Order. To reinstate a prior removal order, an immigration officer must determine "[w]hether the alien has been subject to a prior order of removal," "whether the alien is in fact an alien who was previously removed," and "[w]hether the alien unlawfully reentered the United States." § 241.8(a). And, as mentioned previously, the government is required to apprise the alien of this determination and give the alien an opportunity to contest this determination. *Id.* Because the challenged statements are required by regulation for purposes unrelated to future criminal litigation and comprise the ordinary contents of this notice, they are not testimonial.

Finally, Rojas challenges the IJ's written order from the 1998 proceedings. We have previously held that the statements in an IJ's written order are not non-testimonial, *Valdovinos-Mendez*, 641 F.3d at 1034–35, because the orders are not made in anticipation of future criminal litigation, but instead are "made to record the IJ's decision regarding [the alien's] deportation." *United States v. Ballesteros- Selinger*, 454 F.3d 973, 975 (9th Cir. 2006).

## C

We next turn to Rojas's arguments that the district court made both procedural and substantive errors in sentencing.

**1**

Rojas contends that the district court erred in denying him a two-point downward adjustment for acceptance of responsibility under § 3E1.1(a) of the Sentencing Guidelines. He claims that the district court failed to acknowledge that he admitted all the essential elements of the charged offense, and instead improperly relied on the fact that he exercised his constitutional right to go to trial.  We reject this argument.

The Sentencing Guidelines provide that a district court may grant a two-level downward adjustment to a defendant who "clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  According to the Guidelines, in determining whether a defendant qualifies for acceptance of responsibility, a district court may consider the defendant's conduct in "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)."  U.S.S.G. § 3E1.1 cmt. n.1(A).  By contrast, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.*  "The defendant bears the burden of showing that he has accepted responsibility for his actions." *United States v. Ramos-Medina*, 706 F.3d 932, 940 (9th Cir. 2012).

Because a defendant's right to contest his guilt before a jury is protected by the Constitution, the decision to go to trial "cannot be held against him."  *Id.* at 940 (internal quotation marks omitted).  "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for

his criminal conduct even though he exercises his constitutional right to a trial." U.S.S.G. § 3E1.1 cmt. n.2. Among other things, "a defendant who puts the government to its proof may still be eligible for a downward adjustment if, and only if, he has otherwise demonstrated sincere contrition." *Ramos-Medina*, 706 F.3d at 940 (internal quotation marks omitted). Accordingly, we have reversed a district court that "mistakenly applied a per se bar against downward adjustment based on the defendant's decision to go to trial." *Id.* at 941 (citing *United States v. Ochoa-Gaytan*, 265 F.3d 837, 844 (9th Cir. 2001)). A district court does not commit reversible error, however, simply because it notes the fact that the defendant went to trial, so long as the court bases its final decision on the facts of the case and record as a whole. *Id.* at 941–42. We review for clear error a district court's finding that a defendant did not accept responsibility for his offense. *Id.* at 936.

In concluding that Rojas was not entitled to an adjustment for acceptance of responsibility, the district court noted that Rojas held the government to its burden of proof. The court did not, however, suggest that Rojas's decision to go to trial meant that a downward adjustment for acceptance of responsibility was improper per se. Instead, the court considered other factors, focusing particularly on Rojas's cross-examination of the government agent who had witnessed his removal in April 2010. Rojas argues that the district court clearly erred in finding that this part of his trial strategy weighed against acceptance of responsibility. According to Rojas, the April 2010 removal was not an element of the § 1326(a) offense, but merely a sentencing factor under § 1326(b), and therefore the cross-examination did not constitute a frivolous challenge to relevant conduct. We disagree. In order to convict Rojas under § 1326(a), the

government had to prove beyond a reasonable doubt that Rojas was removed from the United States. The government was entitled to prove this element of the offense by establishing that Rojas was removed in April 2010. *See Old Chief v. United States*, 519 U.S. 172, 186 (1997) (holding that as a general rule, "the prosecution is entitled to prove its case by evidence of its own choice"). Under the Guidelines, it was appropriate for the district court to view Rojas's frivolous challenge to the evidence supporting an element of the offense as weighing against acceptance of responsibility. U.S.S.G. § 3E1.1 cmt. n.1(A). Moreover, the district court could reasonably determine that Rojas's frivolous challenge to his eligibility for a sentencing enhancement under § 1326(b) also reflected a lack of "sincere contrition." *Ramos-Medina*, 706 F.3d at 940. This determination is entitled to "great deference" because the "sentencing judge is in a unique position to evaluate" such factors. U.S.S.G. § 3E1.1 cmt. n.5.

Because the court did not enunciate a per se rule, but rather relied on the facts of the case, including Rojas's frivolous challenge to evidence of his April 2010 removal, it was not clearly erroneous for the district court to conclude that Rojas's conduct was inconsistent with an acceptance of responsibility and to deny him a downward adjustment.

**2**

Rojas also challenges the substantive reasonableness of his sentence. He argues that it was substantively unreasonable for the district court to impose a term of supervised release as part of his sentence because he would likely be deported or removed after he served his prison term, and a proposed amendment to the Sentencing Guidelines,

which was scheduled to take effect a little more than a month after Rojas's sentencing, stated that courts "ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who will likely be deported after imprisonment."    U.S.S.G. § 5D1.1(c) (2011).    Rojas's argument is foreclosed by *United States v. Ruiz-Apolonio*, which held that sentencing courts may, but "are not *required* to consider" a prospective amendment to the Sentencing Guidelines, "unless the amendment has been given retroactive effect by express decision of the [Sentencing] Commission." 657 F.3d 907, 917–18 (9th Cir. 2011).  In this case, there is no language in the 2011 Sentencing Guidelines suggesting that the new supervised release provision has retroactive effect. *See* U.S.S.G. § 5D1.1(c) (2011); U.S.S.G. app. C, vol. III, at 407–11 (2011).  Accordingly, the district court did not err in declining to follow the future amendment to the guidelines language.[12]

**AFFIRMED.**

---

[12] Rojas also argues that district court's revocation of his supervised release from his 2008 conviction violated *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that any fact, other than that of a prior conviction, that increases criminal penalties above the statutory maximum must be proven beyond a reasonable doubt and found by a jury).  As he concedes, *United States v. Santana* forecloses his argument.  526 F.3d 1257, 1262 (9th Cir. 2008).  We therefore reject it.